DETERMINED IN

# THE SUPREME COURT

OF THE

# STATE OF ·WYOMING.

APRIL TERM, 1901,

## DE CLARK v. BELL.

TROVER—CONVERSION OF PROMISSORY NOTES—ACTIONS—PLEDGE—NE-
GOTIABLE INSTRUMENTS.

1. To sustain an action for damages for the conversion of per-
sonal property, it must be shown that the defendant has
wrongly exercised some distinct act of dominion over the
property of plaintiff in denial of his right or inconsistent with
it; and the plaintiff must have had some legal title to the
property, general or special, and either the actual possession or
the right to the immediate possession at the time of the con-
version.

2. To authorize a recovery of damages for the conversion of
personal property, where the defendant came rightfully into the
possession of the property, he must have dealt with it in some
wrongful manner, and the plaintiff must then have had the
right to immediate possession.

3. Demand for the property, and a refusal to return or deliver,
constitute, in any case, not the conversion, but evidence of con-
version, and is usually sufficient evidence thereof in the first
instance; the refusal being open to explanation.

4. Demand is generally necessary before bringing suit where
the defendant has lawfully come into possession. But a posit-
ive act of conversion capable of being shown independent of

demand and refusal would render demand unnecessary even where original possession was rightful.

5. Defendant, in an action for conversion of certain notes, having originally received the notes from the plaintiff as collateral security for a note of plaintiff to defendant, and that fact being admitted, the plaintiff relied upon proof of tender of the supposed amount of his indebtedness to defendant, a demand for a return of the collateral notes, and a failure or refusal by defendant to surrender them. *Held,* that a *prima facie* case was established for the recovery of damages; the measure being the value of the notes less the amount of the indebtedness of plaintiff to defendant upon the principal note; and the burden then rested upon defendant of showing a legal excuse for not returning the notes.

6. The pledgee of negotiable promissory notes, where the same are endorsed or transferred so as to make him a party thereto, acquires the legal title in such paper, and is entitled to collect and receive from the parties liable thereon the sum due upon the same; and, after maturity of the collateral notes, he may proceed by action to collect the whole face value thereof, holding the proceeds to be applied upon the principal indebtedness; and this rule prevails although the principal debt has not matured.

7. Where a promissory note is made payable "on or before" the time fixed for maturity, the maker has the privilege of paying the note previous to maturity.

8. A pledgee of promissory notes, to whom they are endorsed, collecting the amount thereof from the maker, and thereupon surrendering them to the latter, while he, the pledgee, is rightfully in possession thereof and authorized to collect, is not guilty of a conversion of the notes, and hence an action cannot be sustained against him for damages as for a conversion thereof. If he retains more than he is entitled to the remedy is not an action in trover.

[Decided July 26, 1901.]

Error to the District Court, Sheridan County, Hon. David H. Craig, Judge of the Third District, presiding.

This was an action for the recovery of damages for the conversion of three promissory notes, brought by F. A. DeClark against J. B. Bell. Bell had held the notes as collateral security for a note held by him executed by DeClark. Through the agency of a Justice of the Peace, in certain

garnishment proceedings, the collateral notes were collected from the maker, and the amount of the principal note paid to Bell, while the balance was disposed of by the justice in payment of the garnishment plaintiff's claim and by surrendering the remainder to the District Court as garnishee in another action against the principal debtor. Judgment was rendered for defendant, and plaintiff prosecuted error. The material facts are stated in the opinion.

*J. F. Hoop,* for plaintiff in error.

There exists no authority for garnishment proceedings before a Justice of the Peace, after judgment, unless there is an outstanding execution in the hands of an officer, and then the officer holding the execution is the one designated by the statute to issue the notice, and not the justice. In the case, under which the defendant attempted to justify, there was no outstanding execution, and the notice was issued by the justice. Hence, the justice was without jurisdiction, and the delivery of the collateral notes to the justice, in obedience to his order, was not authorized, but was purely a voluntary act on the part of defendant. (R. S., Sec. 4420.) To protect the garnishee in obeying the order of court, the court must have jurisdiction over not only the garnishee, but over the subject matter as well. The garnishee cannot voluntarily appear and substitute his creditor's creditor for his own. (2 Shinn on Att., Secs. 646, 711; Steen v. Norton, 45 Wis., 412; Wells v. Am. Ex. Co., 11 N. W., 537.) The answer of the defendant, therefore, was insufficient, for the reason that it failed to show that the justice had jurisdction in the garnishment proceedings, and plaintiff's demurrer should have been sustained. Every fact necessary to show jurisdiction should have been proven by defendant, as Justice Courts are courts of inferior powers, and jurisdiction is not presumed as to such courts. The justice had no right to appoint a special constable to serve the notice in garnishment.

*E. E. Lonabaugh* and *J. C. Baird,* for defendant in error, argued that to this case the doctrine of damnum absque

injuria applied; that the plaintiff had not lost anything, since the money upon the collateral notes had gone to pay his just debts; and that defendant should not suffer, since he delivered the notes to the justice in obedience to what he believed to be a lawful command. It was also contended that it was not proved that defendant converted the notes to his own use, and that there was not a conversion in its true sense. The following authorities were cited: (8 Enc. L., 694; Watson v. Coburn, 53 N. W., 477; Pollock on Torts, 15, 16, 169.)

POTTER, CHIEF JUSTICE.

This is an action for the rcovery of damages for the alleged conversion of three promissory notes. February 5, 1898, the plaintiff became indebted to defendant upon a note for three hundred dollars, due three months after date. To secure that indebtedness plaintiff delivered to defendant as collateral security three promissory notes for one hundred dollars each, given by one W. P. Waters to plaintiff, dated August 12, 1897, and due respectively "on or before" thirty-three months, three years, and thirty-nine months after date. The petition, after alleging the agreement of defendant to return the collateral notes upon payment of the principal debt, charges that, prior to the commencement of the suit, plaintiff tendered the balance remaining due and unpaid upon the principal debt, and demanded the return of said collateral notes, but that defendant refused to return them and had unlawfully and wrongfully converted the same to his own use to plaintiff's damage in the sum of $350.64. It is also alleged that at the time of the conversion, which is charged to have occurred December 5, 1898, the plaintiff was the owner and entitled to the immediate possession of the notes. Although neither the pleadings nor the evidence fix the date of the tender and demand, it is reasonably to be inferred that it occurred some time after December 5, 1898, and probably a short time previous to April 19, 1899, the date when the suit was instituted. The reason why the 5th day of Decem-

ber, 1898, was mentioned as the date of the alleged con-
version becomes apparent upon consideration of the answer
and testimony on behalf of defendant, for on or about that
date the acts of defendant occurred that are deemed to con-
stitute the alleged conversion.

The testimony of the plaintiff showed no positive act of
conversion, nor did it show whether or not the defendant
had parted with the possession of the notes, but plaintiff's
case was confined to proof of the tender, demand, refusal to
surrender, and value of the notes; the value being fixed at
the amount computed by the plaintiff to be due on them at the
time suit was brought. At the close of plaintiff's case, there-
fore, the only evidence of conversion was the testimony re-
specting the tender of an amount supposed to be due upon
the principal note, the demand for a return of the collateral
notes, and defendant's failure to return them.

By the answer of defendant, and the evidence introduced
to sustain its averments, he justifies his refusal to return the
collateral notes by the following facts: That on the 2d day
of December, 1898, he was summoned as garnishee before a
Justice of the Peace in an action wherein a creditor of plaintiff
had previously obtained a judgment against him, and that on
the 5th day of the same month, having answered, disclosing
the true state of affairs as to the principal note, and his hold-
ing of the collateral paper, he delivered the said principal and
collateral notes to the justice, in compliance with an order to
that effect made and entered by the justice; and that Waters
(the maker of the collateral notes), also a garnishee in the
case, had, in obedience to an order of the justice, paid the
amount of the collateral notes into court; and the proceeds
had been distributed by the justice as follows: $121.93, the
amount remaining unpaid on the note of plaintiff to defend-
ant, was paid to the latter, the judgment against plaintiff was
satisfied out of the remainder; and a balance of $75.00 still
remaining in the hands of the justice, he had paid the same
into the District Court as garnishee in another action wherein
judgment had been rendered against the plaintiff. The col-

lateral notes were endorsed by the plaintiff, the payee therein named, "as security."

The case was tried to the court, and judgment was rendered for defendant. Plaintiff presented his motion for new trial, which was overruled, and he now brings the case here on error.

On behalf of plaintiff, it was contended on the trial by objections to evidence offered by defendant that the garnishment proceedings, and defendant's acts thereunder, constituted no excuse for the failure to return the notes, for the reason, as claimed, that the justice was without jurisdiction in the premises, inasmuch as from the inception of the garnishment proceedings to their close no execution was outstanding; and the same contention is made here. It is contended that after judgment in Justice Court there is no authority for the summoning of a garnishee unless an execution is issued and outstanding in the hands of the officer serving the garnishee notice. The record shows that the only execution issued upon the judgment against plaintiff in the Justice Court had been issued December 1, 1898, and on the same day returned and filed. It is, therefore, insisted that the response of the defendant as garnishee and his compliance with the court's order was purely a voluntary act on his part, and not binding upon the plaintiff.

In our view of the case, however, it is unnecessary to decide the question of jurisdiction in the garnishment proceedings. Those proceedings may be treated as without jurisdiction, and the act of defendant entirely voluntary, and still we think that plaintiff cannot recover in this action. Whether defendant would be liable to respond for any part of the proceeds of the collateral notes in some other kind of action upon different allegations, either as for money had and received, or upon the collateral contract, is not for us to say. We are thoroughly satisfied that his acts did not amount to a conversion of the notes, and that upon the facts, as a matter of law, plaintiff has no right to recover in this suit, which upon the petition and testimony of plaintiff is clearly one in tort for the conversion of the notes.

Conversion is defined as any distinct act of dominion wrongfully exerted over one's property in denial of his right, or inconsistent with it. (Cooley on Torts (2d Ed.), 524.) To recover in trover, the plaintiff must show a legal title, and must have actual possession or the right to immediate possession at the time of the conversion. (Id., 517.) Although, under the code, we no longer call the action by the name of trover, the same principle applies where the action is the same as that originally designated by that name.

To sustain the action, it must be shown that the defendant has wrongfully exercised some distinct act of dominion over the property of plaintiff in denial of his right or inconsistent with it; and the plaintiff must have had some legal title to the property, general or special, and either the actual possession or the right to the immediate possession at the time of the conversion. This merely states the general principle. In this case defendant came rightfully into the possession of the notes. To authorize a recovery of damages for their conversion, therefore, defendant must have dealt with the property in some wrongful manner, and the plaintiff must then have had the right to immediate possession. Demand for the property and a refusal to return or deliver the same constitutes in any case, not the conversion, but evidence of a conversion, and is usually sufficient evidence thereof in the first instance; the refusal being, of course, open to explanation. (Cooley on Torts, 532.) Demand, however, is generally necessary before bringing suit where the defendant has lawfully or without fault come into possession of the property. (Id., 530.) But a positive act of conversion capable of being shown independent of a demand and refusal would render demand unnecessary, even where the original possession was rightful. Nevertheless, even where demand is required, the refusal to surrender possession is but evidence of a conversion rather than itself an act of conversion. For, as has often been said, if the defendant had been guilty of a conversion before, the demand was unnecessary, and if he had not been, a failure to do what he was unable to do, could not render him so.

We have adverted to the fact that plaintiff in this case relied, in making his proof, upon the fact of tender of the amount of his supposed indebtedness, demand for a return of the collateral notes, and the failure or refusal of defendant to surrender them. A prima facia case was thereupon established for the recovery of damages; the measure being the value of the notes less the amount of the indebtedness of plaintiff to defendant upon the principal note.

Defendant then assumed the burden of showing a legal excuse for not returning the notes. The facts shown by him have been stated. Were they sufficient to overcome the prima facia case against him? In our opinion they were sufficient, and we regard them as overcoming the evidence or theory of conversion of the notes irrespective of the question of jurisdiction in the garnishment proceedings.

If those proceedings are not available to the defendant on account of the absence of jurisdiction, then it follows that the act of delivering the principal note and the collateral notes to the justice was a voluntary act on the part of defendant; and the question arises whether he had the right to so deliver them as against an action for conversion.

In the first place, it is to be observed that the defendant had the right to retain the notes held as collateral until the principal note was paid. Until the plaintiff should pay or lawfully tender payment of his note to defendant he would not become entitled to possession of the collateral notes. When the latter were surrendered to the justice the principal debt had not been paid, nor had any tender been made. At that time, then, plaintiff was not entitled to possession. When tender was subsequently made the collateral notes had been paid by the maker thereof, and surrendered to him; and out of the proceeds the principal note had been paid. At the time of the tender and demand therefore nothing was, in fact, due on the principal debt, and the collateral notes were in the hands of the maker, who had paid them, and who had the right to their possession upon such payment. Was it the duty of defendant to have had the collateral notes for surrender to

plaintiff at the time of the tender and demand? Or did he have the right to collect the notes and surrender them to the maker? It would seem that, if we throw out of consideration the garnishment proceedings, the most that can be said concerning the act of defendant is that he collected the collateral notes through the agency of the justice. We do not say that he thereupon became responsible for the proceeds, even if he had authority to collect, nor do we say that he would not be. It would be improper for us to express any opinion on that question, as it is not presented in this case.

The pledgee of negotiable promissory notes, where the same are endorsed, or transferred so as to make him a party thereto, acquires the legal title in such paper, and is entitled to collect and receive from the parties liable thereon the sum due upon the same; and he may, after maturity, proceed by action to collect the whole face value thereof, holding the proceeds to be applied upon the principal indebtedness. (Colebrook on Collateral Securities, 90, 91; Jones on Pledges, 664, 665.) And this rule prevails although the principal debt has not matured. In the case at bar, however, the principal debt had matured long before the collection of the collateral notes. The plaintiff, the payee and pledgor of the collateral notes, endorsed and delivered them to defendant. The latter was invested with the legal title in the same and was clearly empowered to collect them and receive the money due thereon. He had an undoubted right to deliver to another party the principal note, together with the collateral paper, thereby authorizing their collection by such party. It is true that the collateral notes were not due, so that payment thereof could be enforced in December, 1898; but each note, by its terms, was made payable "on or before" the time fixed for maturity, thus allowing the maker the privilege of maturing them, or rather of paying them previous to maturity. The principal note with the collateral notes were thus lawfully, and not wrongfully, in the hands of the justice, where the maker found them, so far as the rights of defendant were concerned, disregarding entirely the garnishment proceedings.

The defendant, therefore, did nothing with the notes he was not authorized to do. Upon payment the notes were properly surrendered to the maker; and thereupon, as notes, they were no longer the property of plaintiff. They were defunct, and in their place was substituted the amount paid thereon. Whatever right, therefore, the plaintiff had in the premises, he did not have a right to recover damages for a conversion of the notes. Defendant had not converted the notes before the demand for them; and at the time of the demand the plaintiff was not entitled to their possession, for the obvious reason that the maker had rightfully paid them, and he was authorized to retain them. If plaintiff has any cause of action against the defendant growing out of these transactions, it is clear that he has mistaken his remedy.

These views are abundantly sustained by authority. (Gilbert v. Walker, 64 Conn., 390; Rice v. Dillingham, 73 Me., 59; Androscoggin R. R. Co. v. Auburn Bank, 48 Me., 335; Goss v. Emerson, 23 N. H., 38; Fletcher v. Fletcher, 7 N. H., 452; Palmer v. Jarmain, 2 M. & W., 282; Platt v. Potts, 11 Ired. L., 266; Race v. Moore, 68 N. Y. Supp., 792; Temerson v. Grau, 67 N. Y. Supp., 847.)

Irrespective of any other question in the case, the judgment, for the reasons above given, was properly rendered in favor of defendant, and it must be affirmed.     *Affirmed.*

CORN, J., and KNIGHT, J., concur.