## FLETCHER v. PUMP CREEK GAS AND OIL SYNDICATE, ET AL.

(No. 1451; May 8, 1928; 266 Pac. 1062.)

330

*E. C. Raymond,* for appellant.

*John P. James* and *E. E. Wakeman,* for respondents.

RINER, Justice.

This case is before the court on direct appeal from a judgment in favor of the defendants and respondents entered in the District Court of Weston County, Wyoming. The notice of appeal is directed to the Pump Creek Gas and Oil Syndicate only, and service of the notice is acknowledged by its attorneys on the day the notice bears date. The other defendants in the court below are consequently not in fact respondents here.

The action instituted in the court below was one for conversion. The plaintiff's petition consisted of two alleged causes of action, the first one dealing with the charge of conversion against the defendants, the second one seeking to recover a commission for the sale of certain personal property which plaintiff claimed defendants employed him to sell. No question is made in appellant's brief of the judgment which the trial court entered disposing of the contentions of the parties with relation to the second cause of action in plaintiff's petition. Hence, it will not be necessary to consider the pleadings or the evidence in the case relative to that matter. Plaintiff's petition in its first cause of action alleged in substance plaintiff's residence in Weston County, Wyoming; in paragraph two thereof, that the defendants, Pump Creek Gas and Oil Syndicate and St. Evans Mountain Corporation were non-residents of the state, being either copartnerships, common-law trusts or corporations, their exact legal status plaintiff being unable to ascertain; that the defendants just named had not filed articles of association, corporation or trusteeship in the state; in paragraph three, that the other defendants were individuals associated with the defendants already named, either as copartners, trustees or officers and stockholders; in paragraph four, that on September 9,

1925, plaintiff and defendants, Pump Creek Gas and Oil Syndicate, E. C. Bennett, V. J. Dunton and L. B. Lilly, entered into a written contract or lease purporting to be between plaintiff and the defendant Pump Creek Gas and Oil Syndicate, copy of which lease was attached to and made a part of the petition; in paragraphs five, six, seven, eight and nine, that pursuant to the agreement, plaintiff delivered to the said defendants all of the personal property listed therein, the property being used by them vnder the contract until May 10, 1926; that some time after the date last mentioned, said defendants, desiring to retain possession of the personal property described in the agreement, agreed to pay plaintiff for the further use thereof $75, and plaintiff permitted said defendants to retain possession of the property until August 15, 1926, on which date the contract was terminated; that the defendants returned to plaintiff out of the property thus listed, certain enumerated items; in paragraph 10, that after the termination of said contract, all of the defendants, claiming to be interested in the oil well described in the lease, took possession of the balance of the personal property described in the petition, and since have retained the possession thereof and refused to deliver the property to plaintiff, although plaintiff repeatedly demanded possession and return thereof to him, having converted the property to their own use; in paragraph 11, that the property so converted by the defendants was of the total value of $697—each item being listed and its alleged value being set opposite; in paragraph 12, that said defendants retained possession of said property over plaintiff's demands and against his protest and refused to deliver the same to him, and converted said property to his damage in the sum of $697.

The defendants, Pump Creek Gas and Oil Syndicate, V. J. Dunton, E. C. Bennett and B. F. Swan, filed a joint answer wherein, as to plaintiff's first cause of action, they admit the residence of the plaintiff, allege that the Pump Creek Gas and Oil Syndicate is a common-law trust and

that defendants, V. J. Dunton, E. C. Bennett and B. F. Swan are the trustees thereof, and that to their knowledge there is no such organization or corporation as the St. Evans Mountain Corporation. The answer admits that the contract and lease pleaded in plaintiff's petition was signed by E. C. Bennett, as President, and V. J. Dunton, as Secretary of the Pump Creek Gas and Oil Syndicate, for the Syndicate, and not as individuals. Paragraphs 5, 6, 7, 8 and 9 of plaintiff's petition are admitted by the answer. The answer denies the allegations contained in paragraph 10 of plaintiff's petition and it is also alleged that at the time the materials set forth in paragraph 9 of plaintiff's petition were delivered to plaintiff, defendants offered to and were ready and willing to deliver to plaintiff the remainder of his property, as listed in paragraph 11 of his petition; but plaintiff advised them he would rather it would remain where it was until he could sell it; that upon plaintiff's specific request, defendants did not deliver the property to plaintiff, but at that time, during the month of October, 1926, and before this action was begun, told plaintiff they would deliver to him his property upon request being made to them for it; that defendants have not refused to let plaintiff have his property; but frequently asked him where he wanted it delivered, or to come and get it and they would pay for the hauling of it to Osage, the place agreed upon; that defendants have not at any time converted the property to their own use, or used it since the agreement expired. Answering paragraphs 11 and 12 of the first cause of action, defendants deny that the values set out therein are the true and correct values listed, deny that they have converted the items or any of them to their use, and allege their willingness at all times to deliver same to plaintiff. The answer also contains matter responding to plaintiff's alleged second cause of action, and further plead against the plaintiff a counterclaim relating to the transaction referred to in his alleged second cause of action.

The new matter pleaded in the answer was specifically denied by the plaintiff's reply.

Trial was had before the court, without a jury, and, after finding generally in favor of the defendants and against the plaintiff on all of the issues, and further finding in favor of the defendant, the Pump Creek Gas and Oil Syndicate, and against the plaintiff on the counterclaim of the former to the effect that plaintiff was indebted to that defendant in the sum of $275, judgment was entered in favor of the Pump Creek Gas and Oil Syndicate for the stated amount and costs.

There is but one specification of error made and argued, this being in substance that the judgment is not sustained by sufficient evidence, is contrary to the great weight of the evidence and not supported by it. The correctness of the court's judgment relative to the counterclaim is not questioned. Plaintiff offered in evidence the agreement of lease. That instrument, signed under date of September 9th, 1925, by the plaintiff and by E. C. Bennett and V. J. Dunton, as President and Secretary, respectively, leased certain drilling tools and equipment, enumerated in a list attached to the instrument, to the Pump Creek Gas and Oil Syndicate for eight months, which time, according to the admissions in the pleadings, was subsequently extended to August 15, 1926. The instrument contained the following clause:

"It is further agreed that party of the second part shall return all tools and equipment furnished under this lease to the first party at Osage, Wyoming, said tools and equipment to be returned or replaced in as good condition as when furnished, less ordinary wear and tear."

Plaintiff testified on cross examination that all of the tools and equipment of the plaintiff were moved on the Pump Creek Gas and Oil Syndicate's property pursuant to the lease-agreement, and this is undisputed. It is apparent then that the syndicate was lawfully in possession

of the property under its contract with plaintiff. The clause for the return of the property to plaintiff at Osage did not specify any particular date when that should be done. Plaintiff testified that on October 17, 1926, he went to the property of the Pump Creek Gas and Oil Syndicate and demanded the return of the balance of the property which had not been sent back to him. He stated that this demand was made of one Starbuck, whom he knew was only the watchman in charge of the premises, and that his demand was refused by Starbuck. Plaintiff further testified that at the time he talked to the watchman, he told him several times that it was perfectly agreeable for the tools to remain there, except that if the watchman should leave, plaintiff would like to have him advise plaintiff, so that plaintiff could send up and get them; that at the time the part of the plaintiff's property referred to in his pleading was returned to him, he "could have had complete delivery of everything." In response to the question, "Isn't it a fact, Mr. Fletcher, that you were trying to effect a sale of some of your own equipment and some of their equipment, or the equipment that they were using, and that you said to Mr. Swan that it might help you sell all of this if your stuff was up there, and that you could sell it altogether?" he answered: "Well, we discussed such a possibility; yes." And to the following question, "And wasn't that the reason, Mr. Fletcher, that this equipment was not delivered to you at the same time the other equipment was delivered?" he answered: "Well, I am not just clear whether or not it is." To the question, "Did you ever ask anyone—Mr. Dunton or Mr. Swan or any officer of the corporation for authority to remove these tools?" he answered: "I never had made a direct demand—except to Mr. Starbuck." The testimony of the watchman Starbuck for the defense was a positive denial that plaintiff ever made any demand whatever on him for the return of the tools. He admitted showing to plaintiff a telegram which he had recently received from defendant Swan, reading: "Do not release any

tools or equipment now on lease without written authority from V. J. Dunton. Letter follows."

The great weight of authority is to the effect that demand and refusal are necessary for the maintenance of an action of conversion in all cases in which the defendant was rightfully in possession. See 38 Cyc. 2032 and extended list of cases cited in note 75. In 2 Cooley on Torts (3rd Ed.) 870, it is said:

"Where the defendant has come into the possession of the property lawfully or without fault, it is in general necessary to make demand of possesion of him before suit will lie."

In Nelsen v. Cowell, 45 R. I. 465, 123 Atl. 897, the court, after approving the rule to which we have just referred, used this language:

"A mere detention of another's chattels, which rightfully came into one's possession, is not an actionable conversion. ·If, however, the detention be based on a negation of the owner's rights, or be accompanied by an intent to convert the property to the holder's own use, a right of action for a conversion will arise. Whiting v. Whiting, 111 Me. 13, 87 Atl. 381. See, also, Hammond v. DuBois, 131 Md. 116, 101 Atl. 612. To constitute conversion the refusal must be absolute, and amount to a denial of plaintiff's right to the possession. Marcus v. C. M. & St. P. Ry. Co., 167 Ill. App. 638; 38 Cyc. 2039 (7)."

In that case there was a lease of a truck to the defendant, subject to termination on failure to pay certain notes for its purchase price. The·notes were not paid and prior to the institution of the action for conversion of the truck, plaintiff sent the sheriff to defendant and in response to the sheriff's demand for the truck, defendant answered only that it was working out of the state at a particular place. The Supreme Court of Rhode Island upheld the contention of defendant that this testimony did not show that he refused to deliver the truck, and the case was reversed.

Amberg v. Philbrick, 33 Ill. App. 200, was an action for trover for chattels belonging to appellee, of which appellant had such possession as resulted from putting a man in charge of premises in which appellee had placed them. The premises had been in the possession of a company in which appellee had an interest, so that he could store the chattels without expense to him. Appellant took possession under a chattel mortgage against the company. Sometime after appellant took posssssion, appellee was notified by the man in charge to take his goods away, but when the latter went for them the man refused to deliver them without "a receipt in good order." The appellee had judgment below, but the appellate court reversed the case, saying:

"The appellee never applied to the appellant for the chattels, and it did not appear that the appellant had ever been informed that the appellee ever applied for his property. On these facts it was held on the trial, both by rulings upon the admission of evidence and upon instructions, that the act of the man in charge was conclusively the act of the appellant, and his refusal a conversion of the chattels by the appellant.

"While a demand upon, and a refusal by, the servant of a pawnbroker or common carrier, within the scope of whose employment it is to determine whether a delivery shall be made, may be evidence of a conversion (Jones v. Hart, 2 Salk. 441; Cass v. N. Y. Cent. R. R., 1 E. D. Smith, 522), yet in the case of a pledge, such a refusal by the general agent, but without being directed by his principal, is not. Pothonier v. Dawson, 1 Holt's N. P. C. 383; 3 E. C. L. 154. This case is cited as authority in 2 Greenl. on Ev. Sec. 645; 2 Sel. N. P. 1395, and 1 Arch. N. P. 604, and nowhere denied. '*Communis opinio* is of good authority in law.' Co. Litt. 186 A; Broom's Leg. Max. 140."

In Goodwin v. Wertheimer, 99 N. Y. 149, 1 N. E. 404, the New York Court of Appeals, in passing upon a state of facts somewhat analogous to those at bar, said:

"The original possession of Wertheimer being lawful and not tortious, it was necessary to change the character of his possession by a demand and refusal, before the plain-

tiffs could mantain an action against him for conversion, or to recover the goods. Add. Torts, 312; Holbrook v. Wight, 24 Wend. 169; Mount v. Derick, 5 Hill. 455; Pierce v. Van Dyke, 6 Hill. 613. There was no proof that the plaintiffs demanded the goods of Wertheimer, personally, at any time. It was shown, however, that the plaintiff's attorney, a few days after the making of the assignment, and just prior to the commencement of the action, went to the store where the goods were and found three persons, one of whom was Goldsmith, one of the firm of Goldsmith & Co. He asked if the assignee of the Goldsmiths was there, and was informed that he was not, and that Goldsmith was in charge. The witness then stated to Goldsmith that he was attorney for the plaintiffs, and in substance demanded the delivery of the goods, on the ground that they had been obtained by fraud. In reply Goldsmith said that he had no power or authority to give up the goods, as the firm had made a general assignment for the benefit of creditors. It does not affirmatively appear what authority Goldsmith had, or in what capacity he was acting. The most that can be inferred from the evidence is that he had the custody of the assigned property for the assignee, and had been placed in charge by him.

"It is insisted that the demand made of Goldsmith was sufficient to support the action against Wertheimer. If Goldsmith, in refusing to deliver the goods, was acting in obedience to Wertheimer's orders, there would be no question. But this cannot be assumed, in the absence of any evidence on the subject. The refusal of a servant to deliver goods intrusted to him by his master, on a demand by a stranger, is not sufficient evidence to maintain replevin against the servant, nor against the master, when a demand and refusal is necessary to make the possession of the defendant tortious, unless the servant acted under the direction of the master in refusing to deliver the goods. Mount v. Derick, supra. It can make no difference in respect to the sufficiency of the demand against the master that the servant knew that the person making the demand was entitled to the property, or that the master's title was voidable. An agent or servant, having the custody merely of goods, cannot bind the principal by acceding to the demand of a third person, nor, on the other hand, by refusing to deliver the property."

With the principles of law set forth by the decisions quoted from before us—principles which we think are sound —it is plain that plaintiff, in order to succeed in the action, must have established both due demand and absolute refusal on the part of the Pump Creek Gas & Oil Syndicate. Assuming that plaintiff made a demand upon Starbuck, the watchman, and the latter refused him, as the plaintiff testified, there is considerable doubt under the authorities referred to above and the testimony in the record, that such demand and refusal would have made the retention of plaintiff's property by the syndicate wrongful and so tortious. Starbuck was simply the watchman in bare custody of the property, placed there by the syndicate for no other purpose than to see that the property was not carried away. He had no other duties. Plaintiff testified he knew this fact. Plaintiff also said he made no direct demand upon the managing officials of the syndicate. The telegram from these officials to the watchman, which plaintiff was shown by the latter, can hardly be inferred as an absolute refusal by the syndicate to return the property in question to the plaintiff. The telegram simply directed the watchman not to turn over property to anyone without written authority from one of the men in actual charge of the enterprise. This would seem to be a precaution quite proper, as it would exclude strangers from obtaining chattels upon their mere verbal claim of their authority to have them.

But whether what we have said above, as to the sufficiency of the assumed demand upon the watchman and his assumed refusal, be so or not, there is another reason conclusive under repeated rulings of this court which also leads to the result we have reached in the case. Plaintiff testified that he made a demand upon the watchman. Plaintiff's testimony in connection with that matter, as appears from what we have abstracted above, is hardly to be deemed satisfactory. But, satisfactory or not, it was his testimony and the point was disputed squarely by the watchman, who says that plaintiff never made any demand on him. On

340

this particular phase of the case there is no other testimony in the record. The trial court had the witnesses before it and was empowered to believe one or the other, after they had been seen and heard upon the witness stand. It is not necessary to cite authorities here to sustain the well known rule of appellate procedure, that where the evidence is conflicting and there is evidence tending to sustain the finding of the trial court, a reversal cannot be had.

The judgment below should be and is affirmed.

*Affirmed.*

BLUME, Ch. J., and KIMBALL, J., concur.