**WOODSON OIL COMPANY et al.,**
**Appellants,**

**v.**

**J. P. PRUETT et al., Appellees.**

No. 13093.

Court of Civil Appeals of Texas.

San Antonio.

Jan. 23, 1957.

Rehearing Denied Feb. 20, 1957.

Keys, Russell, Keys & Watson, Corpus Christi, for appellants.

Perkins, Floyd & Davis, Alice, for appellees.

POPE, Justice.

Woodson Oil Company and others at one time held an oil and gas lease from appellees, but a former suit determined that they lost the lease by reason of non-production. Woodson Oil Company v. Pruett, Tex.Civ. App., 281 S.W.2d 159. The present suit was brought by Woodson Oil Company et al., hereafter called Woodson, against the landowners, Pruett et al., hereafter called Pruett, for an injunction which would permit Woodson to remove trade fixtures used around the well which is still a producing oil well. The trial court refused the in-

# 857

junction, but adjudicated Woodson's future right to remove its trade fixtures when the well ceases to produce. Both sides appealed. Woodson complains that the trial court erred in permanently enjoining it from moving its equipment so long as the well was a producer, and also in denying its prayer for damages based on the market value of the well. Pruett complains that the court erred in holding that the equipment belonged to Woodson at all.

■ Woodson had a lease but lost it. However, Woodson claims that it is entitled to move its trade fixtures from the well, since the lease provided: "Lessee shall have the right at any time during or after the expiration of this lease to remove all property and fixtures placed by lessee on said land, including the right to draw and remove all casing." The former judgment determined that Woodson lost its lease in February, 1953. After that date, but before the court decided Woodson no longer had a lease, Woodson re-conditioned the well and made it into a producer. May Woodson, under the terms of the trade fixture clause in the former lease, now remove its fixtures, if it will, as the trial court found, destroy the producing well?

The trial court properly enjoined Woodson from moving its equipment so long as the well is a producer. The court, upon sufficient facts, found that the removal would destroy the well and waste natural resources, and that was sufficient reason to deny the equitable relief permitting removal of the equipment. Meers v. Frick-Reid Supply Corporation, Tex.Civ.App., 127 S.W.2d 493; Orfic Gasoline Production Company v. Herring, Tex.Civ.App., 273 S. W. 944; Wisconsin-Texas Oil Company v. Clutter, Tex.Civ.App., 258 S.W. 265; Southwestern Oil & Gas Company v. Kimball Oil & Development Company, Tex.Civ. App., 224 S.W. 1111; Powers v. Bridgeport Oil Company, 238 Ill. 397, 87 N.E. 381; Summers Oil & Gas, 2d Ed., § 526; 31–A Tex.Jur., Oil and Gas, § 216.

■ Woodson further complains that the court at least should have awarded it damages measured by the fair and reasonable market value of the well. Woodson's right to those damages was barred by the plea of res judicata. In the original suit between the parties, Pruett sued to cancel the lease. Woodson answered and cross-acted by way of trespass to try title and also by way of a prayer for good faith improvements, and sought reimbursement in the sum of $40,-000. Proof showed that the issue was tried, and the relief was denied. In the present action, the prayer is again made for good faith improvements in drilling, completing and equipping the well. In our opinion, the former judgment is res judicata of that issue, as held by the trial court. Schaefer v. First National Bank, Tex.Civ.App., 189 S. W. 556.

Woodson was barred by res judicata from recovering the market value of the well. The court awarded Woodson the sum of forty dollars per month as rental for the use of the equipment. Conn v. Southern Pine Lumber Company, Tex.Civ.App., 11 S.W.2d 199, 203; 43 C.J.S. Injunctions, §§ 202, 217; 28 Am.Jur., Injunctions, § 304. The record is barren of proof and pleading concerning rental as the measure of damages. But Pruett makes no objection nor point at all protesting that part of the judgment against it. Woodson's point is an attack upon the court's failure to award the market value of the well. There is no point that the award of rentals is outside the pleadings and proof. We, therefore, have no point from either party which protests the rentals.

■ We now come to the complaint that Pruett, the landowner, has against the judgment. The judgment held that Woodson still owns the trade fixtures, but cannot move them until the well ceases production. Pruett urges that the former judgment is res judicata and that Woodson does not own the equipment. The ownership issue, so far as trade fixtures were concerned, was not present in the former suit. In that

action Pruett sued to cancel the lease. Woodson cross-acted by way of trespass to try title and sued for valuable good faith improvements. The trial court considered the cross-action as one for permanent improvements, filed under Art. 7393, Vernon's Ann.Civ.Stats., and as an incident to the real action. The court did not regard the former cross-action as presenting or raising the issue of rights in personalty or trade fixtures; it concerned a lease and an oil well, and, alternatively, the value of good faith improvements. Woodson lost that case, including the lease, the well and the value of good faith improvements. The present action is a dispute over the salvage rights to oil field fixtures, which is entirely different from the former suit. 23 Tex. Jur., Improvements, Private, § 34; 27 Am. Jur., Improvements, § 4. The dispute about the recovery of the fixtures arose when Woodson went out to remove them, after the former suit was concluded.

Pruett further contends that Woodson has already removed the property under the terms of the lease clause. This novel argument arises from this state of facts: The former lease terminated on February 13, 1953; thereafter Woodson commenced reconditioning operations and pulled the tubing; it then restored all the fixtures within a short time, and thus made a nonproducing well into a producer. Pruett reasons that when Woodson had the fixtures out of the hole, it had consummated the "removal" permitted by the former lease, and when Woodson restored the fixtures to the hole over protest, it lost them as a trespasser would. We consider that to be a strained construction of the clause which grants the right to remove the equipment. The "removal" contemplated permission that Woodson could not only detach, but also take the property and fixtures away from and off the premises. The reconditioning operation did not invalidate that meaning of the clause. The trial court determined that Woodson, under the lease, owns and has the right to remove the property and fixtures, but postpones that right in order to avoid the destruction of a producing oil well and the waste of resources. We regard the judgment as the correct one, and it is therefore affirmed.