INTERNATIONAL DISTRESS SIGNALS, INC., aka I.D.S., a corporation, et al., Appellants (Defendants and Cross-Defendants below),

v.

Howard D. McDOWELL, substituted party for St. Alban's Episcopal Church, Appellee (Plaintiff and Counter-claim Defendant below).

No. 4263.

Supreme Court of Wyoming.

Feb. 25, 1974.

Earl R. Johnson, Jr., Casper, for appellants.

J. T. Langdon, Worland, for appellee.

Before PARKER, C. J., and McEWAN, GUTHRIE, and McCLINTOCK, JJ., and PEARSON, D. J. (R.).

Mr. Justice McEWAN delivered the opinion of the court.

Plaintiff-McDowell in his complaint asked for judgment against the defendants on notes, and foreclosure of the mortgage. The defendant-I.D.S. counterclaimed and asked for damages for the unauthorized use and occupation of the real and personal property by McDowell. The trial court entered judgment and ordered foreclosure but granted no relief to I.D.S. on its counterclaim, from which failure it appealed.

I.D.S. operated a funeral home in a building purchased from McDowell's predecessor. The business was conducted by Chester Frank, an employee of I.D.S., as funeral director. While the property was still owned by I.D.S., McDowell and Frank began operating a funeral home on the premises using the personal property located therein. McDowell subsequently purchased the defendants' notes and secured an assignment of the mortgage. The various transactions and unusual events are set forth hereinafter in detail.

On March 19, 1970, McDowell's predecessor, St. Alban's Parish of Worland, Wyoming, sold and conveyed by warranty deed certain real property and improvements located in Worland, Wyoming to I. D.S. for the total sum of $32,000.00. Five thousand dollars was paid in cash at the time of the purchase, and notes in the amounts of $22,000.00 and $5,000.00 made payable to St. Alban's were executed on behalf of the corporation and individually by defendants Drinkwater and Lee. A mortgage to secure their payment was executed by defendant corporation. The $5,000.00 note was paid although $125.00 of the interest was not. On July 13, 1971, St. Alban's filed its complaint and alleged that there was due on said notes $22,125.00, and prayed for judgment against the defendants and for foreclosure of its mortgage. Thereafter, on November 3, 1971, McDowell purchased the two notes from St. Alban's and received an assignment of the mortgage. On July 7, 1972, McDowell was substituted as party-plaintiff.

On August 5, 1970, I.D.S. obtained a loan of $3,900.00 from the Stockgrowers Bank of Worland. The note was secured by caskets and equipment used by I.D.S. in the operation of a mortuary on the property purchased from St. Alban's. On August 3, 1971, McDowell paid this note on which the principal sum and accrued interest was $3,045.93.

Some time in August of 1971 McDowell moved into the building and, together with Frank, began the operation of a funeral business and conducted thirteen funerals. While the record is not clear it appears that McDowell and Frank discontinued the

operation of such business. McDowell paid certain property taxes and insurance premiums.

On May 30, 1973, judgment was entered in favor of McDowell and against the defendants for the balance due on the note together with interest, attorney fees, and reimbursement for taxes and insurance, and the mortgage was ordered foreclosed. The real property was sold at auction.

### Accounting for Personal Property

 McDowell argued that when he paid off the note at the bank he purchased the personal property given as security. Even though the bank could have sold the personal property pursuant to the terms of the recorded combined financing statement and security agreement, the banker testified there was no effort on the part of the bank to do so. McDowell merely paid the note which the bank marked paid and gave it and a termination statement to him. Although McDowell might have taken an assignment of the note and security .agreement and thereby succeeded to all the rights of the bank as the secured party, he did not do so. The property of which he took possession still belonged to I.D.S., and it was entitled to an accounting. I.D.S. agreed that McDowell would be entitled to set off the amount which he paid the bank against the value of the property which was used or disposed of by him. I.D.S., as the claimant, had the burden of proving the value of. the property at the time of the conversion (Suchta v. O. K. Rubber Welders, Inc., Wyo., 386 P.2d 931 at 934), and the only evidence was the testimony of McDowell which showed that the total value of the items was less than the amount which he paid to the bank. It therefore did not meet its burden of showing it was damaged and can take nothing under that portion of its counterclaim. Although most of the items of personal property had either been used up by McDowell .in the operation of the funeral business or were sold by him, an organ, pews, desk, chair, typewriter and filing cabinet were still at the funeral home at the time of trial and remain the property of I.D.S.

### Use and Occupation of Real Property

By its counterclaim, I.D.S. demanded $1,000.00 per month as damages for the use of its property by McDowell. He went into possession of the real property in August 1971, paid property taxes for 1971 and the first one-half of 1972, and obtained casualty insurance on the property through October 27, 1973. He asked for, and in the judgment received, reimbursement for taxes and insurance premiums paid. The judgment provided that McDowell have and recover from defendants I.D.S., C. L. Drinkwater and Eldon L. Lee, jointly and severally the sum of $22,125.00 together with interest thereon at 7 percent per annum from March 19, 1970 (the date of the $22,000.00 note), and the additional sums of $6,400.00 for attorney's fees, $440.00 for reimbursement for insurance and $1,550.45 ·for taxes. According to an allegation in a motion filed by McDowell the property was sold on June 27, 1973 pursuant to the judgment for the sum of $30,515.45, which was the amount of the judgment entered in favor of McDowell.

 Although McDowell testified at the trial that he purchased the mortgage because he thought it would give him a right to be in the building as mortgagee, he had no such right. The mortgage simply created a lien on the land, and title to the mortgaged property did not pass to him as mortgagee even on default. Title passed only on sale by foreclosure. Slane v. Polar Oil Co., 48 Wyo. 28, 41 P.2d 490 at 496. I.D.S., as owner, was entitled to possession of the property, together with the rents and profits, prior to the foreclosure sale. Pursuant to § 1–481(E), W.S.1957 ·(1973 Cum.Supp.), it was entitled to possession of the property and the rents and profits for a period of three months after the foreclosure sale. Therefore, the period for which I.D.S. could require McDowell to account for the occupation of the real property was from August 1971 to September 27, 1973, being 25 months.

■ It is also noted that on January 21, 1972, defendants filed a motion for the appointment of a receiver for the real property. In the motion they alleged that they believed the property was occupied by the McDowell-Frank Funeral Home and they were entitled to receive all income and proceeds derived from the property during both the pendency of the foreclosure action and the period of redemption in the event a foreclosure sale was ordered. McDowell testified at the hearing on the motion held February 1, 1972 that there was no need to appoint a receiver because he would take care of the property. The trial court denied the defendants' motion for appointment of a receiver. Had the trial court appointed a receiver he would have been required to account to the owner, I.D.S., for income from the property, and since McDowell undertook to "take care of the property," it would seem only equitable that he account to the defendants for the use and occupancy of the real property.

■ The question then arises as to whether I.D.S. proved its damages. As claimant it had the burden to prove the value of the rent and profits to which it was entitled. It made no showing of any profits and we therefore consider only the question of rents. Darrel G. St. Clair, whose occupation for the last 21 years had been that of "realtor, insurer" in the City of Worland, was called as a witness by McDowell. Upon cross-examination he testified that during that period he had been involved with numerous rental properties in the Worland area and was acquainted generally with the concept of real estate rentals, and while a fair or reasonable monthly rental would be one percent of the cost of investment in the property, Worland was a low rental area and when the rent gets to "a couple hundred dollars

a month and they are—the businessmen just will walk away." While the cost of the property may have been established at $32,000.00, and based on the one percent per month formula the fair monthly rental would have been $320.00, we think St. Clair's testimony placed a limit of $200.00 per month as the amount which could reasonably have been expected. Even though the property in question was the only building available in Worland suitable for conducting a funeral business according to the witness, St. Clair, and therefore McDowell had to use the building to conduct a funeral business, we think the $200.00 per month limit still was applicable. There was sufficient proof of damages of $200.00 a month for a period of 25 months, and judgment should have been entered for I.D.S. and against McDowell.

■ McDowell argued that even if recovery could be had by I.D.S. for the use of the property, any claim would have to be against the McDowell-Frank Funeral Home, a Wyoming corporation, and not against McDowell individually. This argument may have had some validity in the trial court, and, if so, the McDowell-Frank Funeral Home should have been made a party. The defendants attempted to do so by motion, but apparently upon resistance by McDowell the motion was denied. McDowell did not raise the issue by way of answer to I.D.S.' counterclaim, and since it was not raised below we do not consider it here.

The matter is remanded to the trial court with instructions to enter judgment in favor of I.D.S. and against McDowell in the sum of $5,000.00 on the counterclaim of I.D.S.

McINTYRE, J., took no part in the consideration or decision of the case.