OKMULGEE SUPPLY CORPORATION et al. v. ANTHIS et al.

No. 28680.   Oct. 15, 1940.

Rehearing Denied Dec. 10, 1940.

Application for Leave to File Second Petition for Rehearing Denied June 24, 1941.

*114 P. 2d 451.*

140

Carland Smith, of Okmulgee, for plaintiffs in error.

Walker & Lewis, of Sapulpa, for defendants in error.

HURST, J. Plaintiffs, Ernest R. Anthis and other owners of land in Creek county, and Sam McPherson, assignee of the lessee in an oil and gas lease covering such land, brought this action to restrain defendants Okmulgee Supply Corporation, Roberts, Colchensky, and Ford from removing equipment used in producing oil and gas from wells on the land involved. From a judgment for plaintiffs, defendants appeal.

It is undisputed that at the time the action was brought there were three producing oil wells on the property, one small gas well which furnished fuel for the operation of the oil wells, and one well which had formerly produced oil, but which was not producing at that time. One Briggs, the owner of the lease and equipment thereon, sold the equipment to Okmulgee Supply Corporation, and thereafter sold the oil and gas lease to McPherson. Defendants attempted to remove the equipment from these wells, and thereupon this action was brought. The trial court enjoined the removal, but held that defendant Okmulgee Supply Corporation was entitled to receive from McPherson the reasonable rental value of the equipment, which the court fixed at $60 per month. McPherson does not complain of the judgment. The individual defendants are officers or agents of the Supply Corporation.

Defendants make numerous contentions, but those which we consider decisive are the first three and the eighth. These embody the proposition that the equipment was personal property and could be sold apart from the lease, that the bill of sale thereof required them to remove it at once, and necessarily involved the conclusion by Briggs that the lease was no longer capable of producing in paying quantities, which was binding on all parties, and that therefore the removal thereof could not be enjoined. This requires consideration of the rights of the parties under the oil and gas lease. The lease was in the usual form, running for a fixed term and "so long thereafter as oil or gas, or either of them, may be produced therefrom by the lessee," providing for a royalty of one-eighth of the oil and gas produced, and giving the lessee "the right at any time to remove all machinery and fixtures placed on said premises, including the right to draw and remove casing."

That under the latter clause defendants had a right to remove the equipment within a reasonable time after the termination of the lease is clear. Stephens v. Lundy, 172 Okla. 79, 44 P. 2d 843. But their right to so remove it prior to the termination of the lease, without the consent of the owners of the royalty or mineral rights, and before production has ceased, does not necessarily follow. The right to remove in such case is subject to the implied covenant in the oil and gas lease to operate the same, and produce the oil and gas therefrom, so long as such operation may be profitable, having regard to the interest both of the lessee and lessor. Indiana Oil, Gas & Development Co. v. McCrory, 42 Okla. 136, 140 P. 610; Donaldson v. Josey Oil Co., 106

Okla. 11, 232 P. 821; Ramsey Petroleum Corporation v. Davis, 184 Okla. 155, 85 P. 2d 427; Merrill's Covenants Implied in Oil and Gas Leases, sec. 54. Defendants contend that the express provision in the lease excludes the operation of the implied covenant. But the express provision must be considered in connection with the other provisions of the lease, and so interpreted as to give effect to the mutual intention of the parties. Hicks v. Mid-Kansas Oil & Gas Co., 182 Okla. 61, 76 P. 2d 269. And the object and purpose of the parties in making the lease is to obtain a benefit therefrom. Indiana Oil, Gas & Development Co. v. McCrory, supra. The parties to the lease did not contemplate that the lessee would remove the equipment necessary for production of oil and gas so long as the same could be profitably produced. Such was not the intent, purpose, or meaning of that provision. It was placed in the lease to permit the removal of the equipment only after the lease could be no longer profitably operated or had terminated. Collins v. Mt. Pleasant Oil & Gas Co., 85 Kan. 483, 118 P. 54; Shellar v. Shivers, 171 Pa. 569, 33 Atl. 95; Sunburst O. & R. Co. v. Callender, 84 Mont. 178, 274 P. 834; Orfic Gasoline Prod. Co. v. Herring (Tex. Civ. App.) 273 S. W. 944; Southwestern O. & G. Co. v. Kimball Oil Development Co. (Tex. Civ. App.) 224 S. W. 1111. And the lease could be profitably operated when, by the exercise of due diligence and skill, the value of the lessee's part of the oil and gas produced exceeded the expense of operation. Gypsy Oil Co. v. Marsh, 121 Okla. 135, 248 P. 329, 48 A.L.R. 876.

The obligation of the lessee being to operate the wells so long as they could be profitably operated, it was his duty to the lessor to furnish the necessary labor and equipment for such purpose at his own expense. This positive duty could not be evaded by the sale of the equipment on the lease after the profits had been decreased by the decline in production due to the approaching exhaustion of the oil and gas. And the purchase of the equipment by defendants gave them no greater rights than those of Briggs, from whom they bought. They could not destroy or impair, by the removal of equipment necessary to operate the wells, the right of the lessor under the lease to have the oil and gas produced and saved.

Defendants assert that their purchase of the equipment was made in reliance upon the statement by Briggs that the lease was no longer producing oil in paying quantities, and that the judgment of Briggs, in the absence of evidence that he was not acting in good faith, is conclusive on that question, regardless of whether or not the production was in fact profitable. No authority in support of this assertion is cited, and examination of the prior decisions of this court reveals that in controversies between the lessor and lessee as to whether a well produced oil or gas in paying quantities the question was considered one of fact to be determined by the trial court. Gypsy Oil Co. v. Marsh, supra; Hennessy v. Junction Oil & Gas Co., 75 Okla. 220, 182 P. 666; Parks v. Sinai Oil & Gas Co., 83 Okla. 295, 201 P. 517; Donaldson v. Josey Oil Co., supra. From these cases it would appear that the standard by which the judgment and good faith of the lessee is measured is whether the lease is producing, or by the exercise of reasonable skill and diligence could be made to produce, sufficient oil and gas to justify a reasonably careful and prudent operator in continuing the operation thereof. This was a question to be determined by the trial court from the evidence. We have carefully examined the evidence, and are convinced therefrom that the finding of the trial court that the lease was producing oil and gas in paying quantities is not against the clear weight thereof.

Under the finding of the court, and the authorities above cited, we hold that the attempted removal of equipment necessary for the operation of the wells was a violation of the rights of those plaintiffs who as owners of interests in the mineral rights occupied the position of lessors.

While McPherson has no rights or interest in the equipment as against defendants, he is under the same duty to the other plaintiffs to operate the property as was the original lessee. Due to the peculiar situation, the trial court could not permit the removal by defendants of any of the equipment necessary to operate the wells unless and until McPherson was willing and able to furnish other equipment to replace the portion sought to be removed, as such action would materially prejudice the rights of the other plaintiffs to have the operation of the wells continued. The court could not force McPherson to replace equipment removed by defendants. Nor were the other plaintiffs under legal obligation to permit the removal of the equipment by defendants, and then litigate with McPherson over a failure or refusal on his part to replace it. They were entitled to stand on their right under the lease to have the oil and gas produced so long as that could be profitably done, and leave to the owners of the lease and equipment the adjustment of their differences. The judgment enjoining the removal of the equipment applied only to equipment necessary to the operation of the lease. While defendants complain that the rental fixed is insufficient, the finding of the trial court was not against the clear weight of the evidence. The valuation placed on the equipment by the witnesses was conflicting, defendants' evidence tending to prove it worth approximately $14,000, while plaintiffs' evidence tended to show its value at approximately $6,000. Defendants refused plaintiffs' offer to purchase for the price of $7,200 paid by defendants to Briggs.

Defendants also urge that the judgment amounts to a judicial lease of their property, and that at most they were only required to leave on the lease the casing in the wells, which would be necessary to preserve them. But, as pointed out above, the court could not ignore the rights of the lessors because of the diversity of ownership in the lease and equipment. Briggs could not have removed the equipment so long as the wells were producing in paying quantities, and by the purchase from him defendants acquired no greater right. The rental fixed by the trial court was for the benefit of defendants, and was an attempt to do equity.

2. Defendants also contend that the judgment is not supported by the evidence, and is contrary to law, and cannot be justified upon any theory presented by the evidence, and amounts to a taking of their property without due process of law. In view of what has been said above respecting the rights of the various parties involved, we consider these contentions untenable.

Affirmed.

WELCH, V. C. J., and RILEY, OSBORN, CORN, GIBSON, and NEFF, JJ., concur. BAYLESS, C. J., dissents.