G. L. GALLASPY, Plaintiff in Error,

v.

Isador J. WARNER, Defendant in Error.

No. 37587.

Supreme Court of Oklahoma.

Feb. 4, 1958.

Application for Leave to File Second Petition for Rehearing Denied April 1, 1958.

Rehearing Denied March 11, 1958.

Luttrell & Luttrell, Norman, Hopps & Erdberg, Oklahoma City, for plaintiff in error.

George Bingaman, Purcell, T. R. Benedum, Norman, for defendant in error.

CARLILE, Justice.

The defendant in error, Isador J. Warner, instituted this action in the District Court of Cleveland County against G. L. Gallaspy and R. M. Sims to recover damages for failure to operate two oil wells on plaintiff's land and for destruction of the wells. R. M. Sims was served by publication and made no appearance in the case.

In 1944 the plaintiff Warner executed separate oil and gas leases on the Southwest Quarter (SW¼) and on the Northeast Quarter (NE¼) of Section 4, Township 6 North, Range 1, in Cleveland County in favor of Thomas E. Nix, who subsequently assigned the leases. Within the primary term of the leases the Teepee Drilling Company, assignee and owner of said leases, completed an oil and gas well in the Northeast Quarter of the Southwest Quarter of the land, designated as Well No. 1–A, at an approximate depth of 6490 feet, and in 1949 completed an oil and gas well in the Southeast Quarter of the Northeast Quarter of the land, described as Well No. 1.

On July 1, 1952 the defendants, Gallaspy and Sims, by assignment jointly acquired the oil and gas leases, including the machinery and equipment on the leasehold insofar as the leases covered and described the 40 acre tracts of land on which the producing wells were situated. The No. 1 well was operated by the defendants until about September 23, 1952 when, in an effort to increase the flow production, began a work over job on the well, during which the well was shot with 40 quarts of nitro some time in October. It was then cleaned out, but failed to produce and the well was abandoned and the casing and equipment sold. Well No. 1-A was also abandoned about October 31, 1952, and the casing and equipment in the two wells sold for the net sum of approximately $25,000. The defendant Gallaspy alleged in his answer that the wells failed to produce sufficient to pay the cost of operation and that the plaintiff Warner was aware of defendants' intention to plug the wells prior to the actual operation, and orally agreed and consented thereto, which allegation was denied by plaintiff. The parties requested the trial court to make findings of fact and conclusions of law, and at the conclusion of the trial the court complied with the request and found with respect to Well No. 1, in the Southeast Quarter of the Northeast Quarter that from the time of its completion in 1949 through the month of September, 1952, the well was operated as a commercial producer of oil in paying quantities, and that in a reasonable attempt to increase its production the well was destroyed as a producer, and the court adjudged, as a matter of law, that in a bona fide reasonable effort through proper and ordinary means to increase its production, the well was destroyed as a producer, and that defendants were entitled to and had a right to plug and abandon it, and the plaintiff should recover nothing on his first cause of action. The plaintiff did not appeal from the court's judgment denying the plaintiff any damage by reason of the abandonment of Well No. 1, and it is not an issue on appeal.

The court found with respect to Well No. 2, sometimes designated as Well No. 1-A, that from the time of its completion in 1949 it was a commercial producer of oil in paying quantities; that the defendants operated said well through the month of October, 1952, and on or about that date abandoned the well and plugged the hole, and further found that at the time the well was abandoned there was a reserve of economically recoverable oil under the well of 30,000 barrels; that the oil was of the value of $2.65 per barrel, less the gross production tax, or a net barrel value of $2.50; that the well was producing 200 barrels of oil per month when efficiently operated and was capable of continuing said production at or near that rate; that at the time the well was abandoned it was being operated and could have been operated by a careful and prudent operator at a profit from the seven-eighths working interest in said wells; that the removal of the pipe ruined the effective use of the well for producing oil and gas and the cost of reconditioning the well after it was plugged would have exceeded the expense of drilling a new well at a cost of $35,000.00, and the court concluded as a matter of law that the plugging of the No. 1-A, and the removal of the equipment from the premises constituted a breach of of the basic covenants of the lease, and that plaintiff was entitled to recover his damages; that royalty owners' interest in the reserve under the well was 3,750 barrels of recoverable oil of a net value of $2.50 per barrel, totaling the sum of $9,375.

On April 2, 1956 judgment was entered in the action in favor of the plaintiff Warner against G. L. Gallaspy for the sum of $9,375, with interest thereon at 6% per annum from the date of judgment, and further judgment was entered as against both defendants quieting plaintiff's title in and to the land involved. On denial of the motion for a new trial, filed by the defendant, G. L. Gallaspy, he appealed and is plaintiff in error here.

■ ■ The first proposition and argument advanced by plaintiff in error is that the judgment is not sustained by any evi-

dence. Okmulgee Supply Corporation v. Anthis, 189 Okl. 139, 114 P.2d 451, holds:

"The determination by the lessee that an oil and gas lease is not producing in paying quantities is not conclusive, but when controverted by lessor becomes a question for judicial determination."

The opinion states:

" * * * From these cases it would appear that the standard by which the judgment and good faith of the lessee is measured is whether the lease is producing, or by the exercise of reasonable skill and diligence could be made to produce, sufficient oil and gas to justify a reasonably careful and prudent operator in continuing the operation thereof. * * *."

"The term 'paying quantities', as used in an oil and gas lease, means paying quantities to the lessee. If the well pays a profit, no matter how small, over operating expenses, it produces in paying quantities, though it may never repay its cost and the operation as a whole may prove unprofitable." Henry v. Clay, Okl., 274 P.2d 545.

■■ Expert testimony or evidence on behalf of the plaintiff Warner was given at the trial by David L. Dooley, a petroleum engineer, who testified that, in his opinion, Well No. 1–A at the time it was abandoned and plugged had 56,000 barrels of economically recoverable oil under the 40 acres on which it was located, and explained the reasons upon which he based his opinion. We think the facts and circumstances upon which he relied for his opinion affords a reasonable basis for his conclusions, and that it cannot be rightly said that it was based upon mere surmise or conjecture. There was a conflict between the testimony and opinions of the engineer Dooley and that of the engineers who testified on behalf of the defendant Gallaspy with respect to the amount of recoverable oil under the well and the cost of producing the same, which testimony presented questions for judicial determination by the court. There

was evidence that the well produced 178.93 barrels of oil during the month of October, the last month it was operated, and that during the five months period from June to October, inclusive, there were 1023.63 barrels of oil sold from the production, but the record does not show the amount of production each month.

"It is a well settled rule in this state that evidence is sufficient to sustain a judgment if there is any evidence reasonably tending to prove, either directly or immediately, or by permissive inference, the essential facts to sustain the verdict and judgment rendered thereon." Shell Pipe Line Corp. v. Curtis, Okl., 287 P.2d 681, 683.

We have considered the evidence as a whole and are unable to agree with the contention of plaintiff in error that the finding of the court to the effect that the well was capable of being operated at a profit to the lessees is not supported by the evidence. On the contrary, we find that there is competent evidence to support the finding and judgment on that issue, and conclude that the judgment thereon is not against the clear weight of the evidence.

■ The second proposition by plaintiff in error is that the judgment is not supported by the evidence in that it allows for damages without any evidence or finding as to the present worth of the oil that would be eventually recovered by plaintiff and without reducing the damages to present worth. The trial court found that Well No. 1–A had a reserve of economically recoverable oil of 30,000 barrels; that it was producing 200 barrels of oil per month when efficiently operated, and was capable of continuing said production at or near that rate; that Warner was entitled to ⅛th thereof, or 3,750 barrels, with a value of $2.50 per barrel, or a total value of $9,375, and awarded plaintiff judgment therefor. Plaintiff in error contends that the judgment is in excess of the damage sustained by plaintiff and greater than he could have gained by the continued operation of the well. We think the contention must be sustained. Our attention is called to 23 O.S.

1951 § 96, which provides that no person can recover a greater amount in damages for the breach of an obligation than he could have gained by the full performance thereof on both sides, except where recovery may be for exemplary and penal damages. The statute is referred to and applied in Rucker v. Mason, 61 Okl. 270, 161 P. 195; Gilmore v. Battles, 193 Okl. 396, 144 P.2d 114; and Anderson v. Hodges, 187 Okl. 43, 100 P.2d 853. Anderson v. Hodges, supra, holds:

"In an action for the breach of a lease contract, the contract itself and the law applicable thereto must furnish the measure of damages, and the amount recovered cannot except in cases where recovery may be had for exemplary damages and penal damages, exceed the amount the plaintiff could have gained by a full performance of the lease contract on both sides."

The opinion also refers to 15 Am.Jur. 417, Sec. 24, a portion of which reads:

"As a rule, in this country, an allowance for future damages must be reduced to their present worth or to such a sum as, being put at interest, will amount to the sum the jury finds the plaintiff will lose in the future by reason of the alleged injuries. * * *"

23 O.S.1951 § 21, fixes the measure of damages for breach of contract, except where otherwise provided, at an amount which will compensate the party aggrieved for all the detriment proximately caused thereby. There is no uncertainty in the present action as to damages arising from loss of future royalty payments under the lease; the question is the amount which will accurately compensate the plaintiff for the loss. It is manifest from the record that if the amount awarded plaintiff is sustained he would recover for the value of the royalty due in later months and years, hence he would receive the use of the money in advance of the time he was entitled to recover it, and would gain more than he otherwise would by full performance of the lease contract.

Plaintiff was awarded judgment for $9,375. The amount which should have been awarded plaintiff was such sum as would produce, at such rate of interest as could be fairly expected from safe investments which a person of ordinary prudence, but without particular financial experience or skill, could make in that locality, an amount which would equal the sum due him under a full performance of the lease contract. In this regard see Jones v. Epler, Okl., 266 P.2d 451, 48 A.L.R.2d 333, and Annotation at 105 A.L.R. 234 concerning the rate of interest to be considered in computing the present value of future benefits. The rate of interest to be used in making such computation is ordinarily a question of fact to be determined by the jury, or the court in a case tried to the court, upon the basis of the evidence presented. In the case at bar, however, no evidence whatsoever was presented as to what rate of interest could be fairly expected. Under such circumstances, we are of the opinion that the legal rate of interest, the rate we are constrained to allow when none is stipulated and interest is due, which is, of course, 6%, should have been used. In the absence of evidence to the contrary, it seems quite equitable that the discount charged to the plaintiff should be at the rate at which interest would be allowed to the plaintiffs on a past due claim of similar character.

Three years and five months elapsed from the date Well No. 2 was abandoned on November 1, 1952 until the date of judgment, April 2, 1956, and at the rate of 200 barrels monthly production, which the court found the well would produce at a profit, there would have been due plaintiff on the date of judgment a ⅛th share of the production from the well, or a total accrued royalty of 1025 barrels of oil, which amount, deducted from the total royalty due plaintiff, would leave 2725 barrels of oil as royalty, payable monthly in the amount of 25 barrels per month at a net value of $2.50 per barrel, or the total sum of $6,812.50. The first month's interest at 6% on said total sum would be $34.06, and the monthly interest

from May 1, 1956 would be reduced 31¢ each month during the succeeding months. The interest for the first year on the total royalty due in the future, less the value of the monthly royalty would amount to $388.-26, and the monthly and annual interest on future royalty payments would decline each month by reason of the accruing royalty of $62.50 per month.

We find the total interest on the future royalty installments or payments to be $1,-875.75, and the amount of plaintiff's award should be discounted by that amount.

We also note, however, that on the date of the judgment there was a total accrued royalty of 1025 barrels of oil already due plaintiff, which, if the lease contract had been fully performed, would have been received by plaintiff at the rate of $62.50 per month during the preceding 41 months, but which plaintiff did not receive. We are of the opinion that while the amount which plaintiff would receive in advance of the time he was entitled to recover it must be discounted to its present worth, at the same time the amount which plaintiff was entitled to receive in the past but has not received must likewise be adjusted to its present worth by the allowance of interest thereon at the same rate as that used in determining the present worth of the future benefits not yet due. We find that interest at the rate of 6% on the royalty already accrued at the date of judgment, from the date each monthly payment would have been received had the lease contract been fully performed, to the date of judgment, amounts to the sum of $387.45, which sum should be added to the amount of plaintiff's award.

 The correct amount for which judgment should have been awarded the plaintiff, Warner, is therefore $9,375, plus $387.45 interest on past due royalty not yet received, less $1,875.75 discount on future royalty installments not yet due, or the sum of $7,886.70.

The concluding part of the opinion in Busboom v. Smith, 199 Okl. 688, 191 P.2d 198, 201, states:

"The judgment of the trial court being clearly erroneous as to the amount awarded defendant, as hereinbefore pointed out, may be corrected by this court on appeal. Gray v. Cosden, 141 Okl. 183, 284 P. 288; Stumpf v. Stumpf, 173 Okl. 1, 46 P.2d 315. * * *."

The judgment of the trial court in the present action is erroneous and excessive as to the amount awarded the plaintiff below, as herein pointed out, and the judgment is modified by reducing the amount of recovery awarded plaintiff from $9,375 to $7,886.70, and as so modified is hereby affirmed.

WELCH, C. J., CORN, V. C. J., and DAVISON, JOHNSON and WILLIAMS, JJ., concur.

BLACKBIRD, J., dissents.