**B. K. EUBANK, Appellant,**

v.

**TWIN MOUNTAIN OIL CORPORATION,**
**Appellee.**

**No. 4096.**

Court of Civil Appeals of Texas.

Eastland.

Sept. 23, 1966.

Rehearing Denied Oct. 14, 1966.

John O. Harris, Coleman, for appellant.

Jennings, Montgomery & Dies (Elton M. Montgomery) Gràham, for appellee.

COLLINGS, Justice.

Twin Mountain Oil Corporation brought suit against B. K. Eubank to remove cloud on its title to a mineral leasehold estate covering a 50 acre tract of land and for equitable relief. The case was tried before the court without a jury and judgment rendered quieting plaintiff's title and decreeing that Eubank had the right to remove all of his personal property and equipment except the casing in the three wells located thereon. The court further found that $1800.00 would compensate Eubank for the recoverable casing that he was not permitted to remove and decreed that, upon depositing such sum by plaintiff into the Registry of the court, title to the casing would vest in plaintiff. The court decreed that Twin Mountain Oil Corporation be responsible for plugging the wells. Eubank has appealed.

Appellant presents points contending that since the oil field casing is a trade fixture and the right to remove same was reserved by him it was error to prohibit and enjoin him from pulling and removing such casing from the wells; that the court erred in holding that to allow appellant to pull his casing from the wells would constitute a waste of natural resources which appellee had the right to enjoin; erred in holding that title to the casing would, on depositing by appellee of $1800.00 into the Registry of the Court, divest out of appellant and into appellee; erred in not allowing appellant the cost of drilling the three wells, together with the value of the 5250 feet of casing therein, without deducting the estimated cost of pulling, plugging and non-recoverable casing, and erred in not requiring appellee to deposit sufficient security to indemnify and protect appellant from liability in plugging the wells.

Appellant Eubank at one time held producing leases on the 50 acre tract involved. He became "operator", or in charge of the management of the lease, in March 1958. He was the owner of the 5250 feet of casing in the three wells. These wells had produced oil but none has been produced since 1959. No oil has been sold or marketed off the premises by Eubank since July 1958, when his pipeline connection was severed by an order of the Railroad Commission. Apparently, Eubank continued to produce oil from the lease after the pipeline severance but, in January 1959, the electrical hookup to the pumping units was disconnected. He, nevertheless, continued to report some monthly production, although no sales, through September 1959. The record does not show that the wells produced oil in paying quantities.

In December 1964, appellee, Twin Mountain Oil Corporation, acquired its leases on the premises. Prior to that time some of the mineral owners had repudiated appellant's lease and advised him to remove his equipment from the premises. In November 1965, Eubank wrote the Railroad Commission to protest appellee's designation as the operator of the premises entitled to possession thereof. This suit was instituted to determine that matter. Appellant still claimed title to the leasehold at the time of the trial.

None of Eubank's equipment had been removed from the lease in December 1964 when appellee acquired its leases. There was testimony by appellee's Vice President and Production Superintendent, H. T. Hunnewell, to the effect that at the time of the trial the tubing and rods had been removed from the three wells but that the casing remained and was cemented at intervals of from 1650 to 1750 feet beneath the surface; that the wells could be made to produce again by using the casing as in the wells and that such procedure would be the most efficient way of getting back on production; that pulling of the casing could not be accomplished without exploding the casing in the bottom of the hole away from the cement, and that if the casing should be so removed the well bores in the three wells would be destroyed with resulting waste of natural resources. The witness stated that appellee intended to and would develop the lease by using the casing in the three wells as now situated.

It is undisputed that Eubank owned the casing when production of the wells ceased in 1959. The leases under which appellant operated expressly gave him the right to remove such casing. As found by the court the leases under which appellant operated are no longer in effect, but terminated in 1959 because of cessation of production of oil and/or gas which was necessary to perpetuate said leases under the terms and provisions thereof. Appellant thereby lost such leases. He did not at that time remove the casing from the wells as he had the right

to do. More than five years later, in December of 1964, when appellee acquired its leases on the land the casing had still not been removed. During all of this time there had been no production. It has been held where a lessee allows five years to pass before making claim to casing which he left in an abandoned well that he has lost his right of removal. This judgment, however, is based upon the theory that appellant at the time of the trial was still the owner of the casing and had the right to remove it, except for the equitable considerations involved.

The court found that, based upon geological and engineering information, the wells if re-entered and re-worked were reasonably capable of producing and probably would produce oil in paying quantities, and that under such circumstances the removal of the casing would constitute a waste of natural resources in that it would destroy the well bores and thereby reduce the net oil recoverable from the premises. The court further found that appellant would suffer loss by reason of being denied the right to remove the casing, but that the casing did not have unique characteristics which would make it more valuable than casing of similar size and weight available for purchase on the market. It is held that the owner of casing in an oil well does not have the right to destroy a producing well by taking away the casing. 42 Tex.Jur.2d page 650. Wisconsin-Texas Oil Co. v. Clutter, Tex.Civ.App., 258 S.W. 265; Southwestern Oil & Gas Co. v. Kimball Oil & Development Co., Tex.Civ.App., 224 S.W. 1111. In our opinion the court did not err in denying appellant the right to remove the casing from the three wells which are reasonably capable of producing and probably will produce oil in paying quantities. Woodson Oil Company v. Pruett, Tex.Civ.App., 298 S.W.2d 856 (1957, ref. n. r. e.) and cases and authorities cited therein.

Appellant urges that the Woodson case and other like cases cited are not controlling because such suits were between

lessors and successors in interest and a lessee or its successor in title. We cannot agree with this contention. Appellee, Twin Mountain Oil Corporation, by virtue of the leases under which it holds, is a successor in title to the owners of the mineral interest. It is thereby entitled to possession and control of the premises for the purpose of mineral development including the right to the use of the abandoned oil wells.

The court correctly held that under the facts and circumstances in evidence appellant, even though the owner of the casing involved, was in equity not entitled to remove it from the wells. The owner of casing under such circumstances is entitled to be compensated for the reasonable value thereof. 4 Williams Oil and Gas Law page 213, et seq. The court found upon sufficient evidence that $1800.00 would reasonably compensate Eubank for the removable casing. The judgment for Eubank was based upon this theory and measure of damages. We overrule appellant's points urging, in effect, that such action of the court was error.

The judgment absolved appellant from any liability in connection with the plugging and abandoning of the three wells and decreed that appellee Twin Mountain Oil Corporation should hereafter be solely responsible and liable for the plugging. We overrule appellant's point urging that the court erred in not requiring appellee to deposit with the Clerk sufficient security to indemnify appellant from liability in plugging the wells.

Appellant's contention that the court erred in not allowing him to recover the cost of drilling the three wells in the approximate amount of $3,400.00 each is likewise overruled. His claim of a right to recover on the theory of valuable improvements made in good faith as contemplated by Vernon's Ann.Tex.Civ.St. Art. 7393 is not tenable. The record does not show that the wells were drilled by appellant under the mistaken belief that he was the owner. Appellant was the owner of oil and gas

leases on the land. The wells were drilled in accordance with such leases and oil was produced from the wells. When appellant ceased to produce oil from the premises his leases terminated. The wells are a part of the real estate and upon the termination of the leases the wells became the property of the lessors and appellant had no further title thereto and has no right to recover the cost of drilling such wells.

Appellant's points are overruled.

The judgment is affirmed.