**CHAMPION VENTURES, INC., and Jack Bradley, Jr., Appellants (Some of Defendants below),**

v.

**Wayne H. DUNN, Appellee (Plaintiff below).**

**No. 5004.**

Supreme Court of Wyoming.

April 24, 1979.

Rehearing Denied June 8, 1979.

---

John J. Sampson, Newcastle, for appellants.

Richard S. Dumbrill of Jones, Dumbrill & Hansen, Newcastle, for appellee.

Before RAPER, C. J., McCLINTOCK, THOMAS and ROSE, JJ., and GUTHRIE, J., Retired.*

ROSE, Justice.

This appeal represents the second time that these parties have been before this court, requesting a determination of the rights that plaintiff-appellee Dunn has in certain oil well casing pipe. See, *Champion Ventures, Inc. v. Dunn,* Wyo., 567 P.2d 724 (1977). In our first decision on this matter, we reversed the trial court's judgment that found defendants guilty of conversion of the casing pipe and indicated "that there was, in any case, insufficient evidence of damages." 567 P.2d at 730. After our mandate was issued, the plaintiff moved the trial court to enter judgment in his favor on the plaintiff's alternate claim for the reasonable rental value of the casing. Defendant Bradley sought, but was denied, a writ of prohibition on the grounds that we had not instructed that the case be remanded for further proceedings, and that necessary and proper parties had been dismissed from the action (Supreme Court No. 4915).[1] The district court proceeded to hold a hearing on the plaintiff's claim and subsequently entered a judgment declaring that a constructive lease existed between the parties and that plaintiff was entitled to rental monies dating from May 1, 1974 and continuing thereafter for so long as the defendant's well is productive. We will affirm the district court judgment.

Defendants reassert that the trial court erred in assuming jurisdiction over plaintiff's alternate claim for relief, and further assert that the judgment entered is not supported by the evidence.

Defendants implicitly ask this court to reconsider our denial of their application for a writ of prohibition. We have no doubt but that we could reconsider the effect of that denial and that we could, furthermore, hold that the propriety of awarding plaintiff a reasonable rental for the well casing pipe has already been decided by virtue of our reversal in the first appeal. Due, however, to the confusion that may have been engendered by our first opinion, it is more appropriate to directly address the trial court's second judgment. Only in this way can we clarify the plaintiff's legal entitlement to reasonable compensation.

We noted in our first decision—when discussing the plaintiff's claim of conversion—that the Oklahoma Supreme Court has held that where a well was capable of producing in paying quantities the owner of well casing has no right to remove the casing, but to do equity the casing-owner may be entitled to a reasonable rent award. *Okmulgee Supply Corporation v. Anthis,* 189 Okl. 139, 114 P.2d 451 (1941). See, 4 Williams, Oil and Gas Law, § 674.2, at p. 216 (1977). Another court has held that where there is sufficient evidence that a well, when reentered and reworked, will be reasonably capable of producing and probably would produce oil in paying quantities, the owner of the well casing is entitled to be compensated for the reasonable value thereof and that upon payment of this amount, title to the casing would vest in the adverse party. *Eubank v. Twin Mountain Oil Corporation,* Tex.Civ.App., 406 S.W.2d 789, writ ref'd

---

* Justice Guthrie, Ret., was assigned to sit for Rooney, J., who recused himself.

1. With regard to defendants' reassertion of their contention that indispensable parties were dismissed from the case, resulting in inequity to the defendants, we simply note that these other parties—owners of a 35% working interest in the leasehold—were dismissed from the original action and no appeal was taken from that decision. Persons, not parties to an appeal, are not affected or concluded thereby. *Western National Bank of Casper v. Harrison,* Wyo., 577 P.2d 635, 642 (1978). We find no reason, in this case, to adjust the plaintiff's recovery because of this circumstance, nor is there a need, therefore, to discuss the indispensable-party issue.

n.r.e. (1966). Reasonable compensation in such cases has been defined as the reasonable market value of the casing after deducting the costs of pulling, plugging and nonrecoverable casing. *Patton v. Rogers,* Tex. Civ.App., 417 S.W.2d 470 (1967).

Each of the cases where rent or other reasonable compensation has been awarded was concerned with a well that was producing in paying quantities, or a well that was reasonably capable of producing, or probably would produce, in paying quantities according to geological and engineering information. Only this makes sense, since if the casing-owner could prove that the well was *not* capable of producing in paying quantities, he would have the right to possession of the casing or the right to proceed with a claim of conversion. *Champion Ventures, Inc. v. Dunn,* supra, at 729.

■ As a result, before the plaintiff is entitled to compensation for the casing, as a matter of law, he must prove by sufficient evidence: (1) The well is producing or is reasonably capable of producing, and probably will produce, in paying quantities. (2) The reasonable market value of the casing, after deducting the costs of pulling, plugging and nonrecoverable casing.

The trial court found that plaintiff was entitled to reasonable compensation, and that such compensation was equal to a return of plaintiff's original $12,000.00 investment in the casing over a period of six years. The return on investment was calculated by taking one-sixth of the $12,000.00 investment, or $2,000.00 per year, or $166.66 per month, and assessing that amount against defendants as of May 1, 1974—the approximate date when plaintiff first demanded possession of the casing. Since this judgment was entered in March, 1978, defendants were found to owe $7,800.00 in back rental. Additional monthly payments were to commence on April 1, 1978.

## PRODUCTION IN PAYING QUANTITIES

■ Plaintiff's entitlement to reasonable compensation is necessarily premised on the presence of sufficient evidence that the well is producing, or is reasonably capable of producing, in paying quantities. We noted in our first decision that the record in this case was unclear as to whether the well was capable of producing in paying quantities. 567 P.2d at 730.

A reconsideration of the evidence presented at the first trial, along with the evidence presented at the second proceeding, reveals the following: Defendant Bradley testified that during the period beginning in May, 1974, and ending in February, 1976, he had realized a net operating profit of $866.40. (Record in Case No. 4709). Since the first trial in April, 1976, Bradley has only produced the well enough to maintain its "held by production" status. Bradley testified at the first trial that it was his opinion—based on discussions with geologists and his own experience in oil production—that the well would initially pump 25 to 30 barrels a day and then would level off, over a period of 12 or 15 years, to 10 barrels a day. Depending on crude prices, the end result would be a marginally commercial well (Record in Case No. 4709). At the second hearing on this matter, Bradley testified that, based on swabbing tests, it was evident that the well was a small, high-pressure well—a "stripper well" which he hoped would produce something in the ten-barrels-per-day range.

Although the above-mentioned evidence is slim, we hold that the trial court was justified in implicitly finding that the well was reasonably capable of producing, and probably would produce, in paying quantities.

## REASONABLE COMPENSATION

The trial court premised its award of reasonable compensation on a witness' testimony that "if a value could be placed on that casing it would seem no more than fair to me that at least within a period of five to seven years they should at least receive back the value of that casing, what it's determined to be." The same witness, on cross-examination, testified that in estab-

lishing the value of casing he would start with the market value and then deduct the costs of recovery. This method of valuation approximates that used in the Texas cases cited previously. It appears, however, that the trial court placed the value of the casing at the amount of plaintiff's investment in the casing.

■ Where there cannot be a fixed amount of damages, triers-of-fact must of necessity be given broad discretion in deciding what award is fair and just. *Chittim v. Armco Steel Corporation*, Wyo., 407 P.2d 1015, 1018 (1965). For this reason, we are not inclined to disturb the trial court's use of the plaintiff's investment as a base-value figure. Nor are we inclined, in this case, to modify the judgment and order an award to the plaintiff consistent with the Texas decisions—even though the market-value approach, with a deduction for salvage costs, would seem to be more desirable.

The trial court may have used this return-on-investment approach because of this court's intimation in our first decision that we would be hard-pressed to find that plaintiff had shown nonspeculative damages for conversion—given the difficulty in predicting the amount of damage that could result during removal operations. 567 P.2d at 730.

Our observations in the first decision with regard to damages were not, of course, necessary to the disposition of that appeal—since we had already held that the plaintiff had failed to prove a right to immediate possession which was necessary to the success of his conversion action. Upon reconsideration of that observation, it is realized that if we were to require a party seeking compensation in these types of cases to prove the exact condition of the casing after pulling, we would be asking the impossible. It is sufficient if the party seeking compensation proves, with a reasonable degree of probability, the anticipated amount and quality of removable casing.

While other relief may have been preferable, we hold that the trial court's attempt to do equity in this case resulted in reasonable compensation to the plaintiff and is sustained by the evidence.

The judgment of the trial court is affirmed in all respects.

McCLINTOCK, Justice, partially concurring and partially dissenting.

As I read the appellants' brief, they do not question the propriety of permitting appellee, as the owner of the casing, to recover compensation for the use thereof by others. They assert very broadly that the award of damages against them is contrary to and not supported by the evidence, and is speculative and inequitable. Insofar as they raise questions concerning the amount of pipe that was recoverable, the condition thereof, value thereof and the value of the use thereof, I think they run into the old and settled proposition that this court will not act as a trier of the fact, and their contentions must be denied.

Insofar as they argue that it was error for the court to proceed to assess the rental value in the absence of other lease-hold and working-interest owners, considered by them to be indispensable parties, I cannot agree that those other owners are persons "without whose presence before the court a final decree could not be made without either affecting [their] interest or leaving the controversy in such a condition that its final determination might be wholly inconsistent with equity and good conscience." *Amerada Petroleum Corporation v. Rio Oil Company*, 225 F.Supp. 907, 910 (D.C.Wyo.1964). I think that the trial court's decision, affirmed by the majority, reaches a decision that has a favorable effect on the absent parties' interest in that they are not charged with the burden of the use of the equipment which was for their benefit proportionately with that received by appellants. But this does not result from the absence of those parties. This then justifies appellants' argument that it is inequitable to assess them with 100% of the rental. They can be protected by requiring a proper apportionment of the rental to the interests of the parties. I would assess Bradley with 55% of the rental value and Champion Ven-

tures with 10%, leaving Dunn to seek whatever remedy might be available to him as against the owners of the other 35% interest.

My examination of the record has disclosed nothing that permits me to conclude that either Champion Ventures under its operating agreements with all of the lessees, or Bradley as its designated operator, agreed with Dunn expressly or by factual implication to pay the latter anything for the use of the casing. The original dispute involved the right of Dunn to remove the casing. Our previous judgment holds only that Champion and Bradley were not guilty of conversion in preventing the removal of the pipe.

The majority may have deemed it unnecessary to point out upon what legal theory liability for use of casing belonging to another is imposed. *Okmulgee Supply Corporation v. Anthis*, 189 Okl. 139, 114 P.2d 451, reh. den., (1941), cited in our earlier opinion in this case, 567 P.2d 724, 728, and in the majority herein, sustained the imposition of a rental value against the successor lessee (taking over the operation at the well and using well equipment which had been separately sold) as "an attempt to do equity." There has been no agreement therefor and the facts were not such as to justify a finding of a contract implied in fact, but the lessee against whom the charge was imposed had not appealed. The case of *Eubank v. Twin Mountain Oil Corporation*, Tex.Civ.App., 406 S.W.2d 789, reh. den., (1966), likewise cited in the majority opinion, permitted Eubank, who had placed casing in the well under a lease which subsequently terminated, to recover the value of that casing from Twin Mountain, a new lessee who in the course of the action was granted an injunction against the removal of the casing. The court held that the "owner of casing under such circumstances is entitled to be compensated for the reasonable value thereof." In effect the court thereby made its own sale of the casing from the lessee who had installed the same to the subsequent lessee. There was no evidence of an express or implied agreement, but again the involuntary vendee had not disputed the court's action.

It appears to me that what the court has done in each of these cited cases is to judicially impose either a contract of lease or a contract of sale where neither of the parties had intended to enter into any such agreement. Here, the term "constructive lease," as used by Mr. Justice Thomas in his concurring opinion in the earlier case, appealed to the district judge and he found a constructive lease to be present. I have found no authorities discussing constructive leases but in 17 C.J.S. Contracts, § 6, pp. 566–570, I find reference to constructive contracts. Since a lease is a form of contract I consider this quotation pertinent:

> "Contracts implied in law, or, as stated supra § 4, more properly quasi or constructive contracts, are a class of obligations which are imposed or created by law without regard to the assent of the party bound, on the ground that they are dictated by reason and justice, and which are allowed to be enforced by an action ex contractu. They rest solely on a legal fiction and are not contract obligations at all in the true sense, for there is no agreement; but they are clothed with the semblance of contract for the purpose of the remedy, and the obligation arises not from consent, as in the case of true contract, but from the law or natural equity. The courts employ the fiction of quasi or constructive contract with caution."

The constructive-lease theory used in this case, then, represents an obligation imposed by the court, on the ground that it is dictated by reason and justice and not by reason of the agreements, express or implied, between Dunn on the one hand and Champion Ventures and Bradley on the other. The text just quoted makes this further observation (pp. 570–572):

> "Generally, quasi or constructive contracts rest on the equitable principle that a person shall not be allowed to enrich himself unjustly at the expense of another, and on the principle that whatsoever it is certain that a man ought to do, that the law supposes him to have promised to do. * * *

* * * * * *

"The essential elements of quasi contract are a benefit conferred on the defendant by the plaintiff, appreciation by the defendant of such benefit, and acceptance and retention by the defendant of such benefit under circumstances such that it would be inequitable for him to retain the benefit without payment of the value thereof."

The principles pertaining to quasi contracts were discussed by this court in *Roberts v. Roberts*, 64 Wyo. 433, 196 P.2d 361, 367 (1948), which quotes from Keener on Quasi-Contracts, p. 19:

" 'By far the most important and most numerous illustrations of the scope of quasi-contract are found in those cases where the plaintiff's right to recover rests upon the doctrine that a man shall not be allowed to enrich himself unjustly at the expense of another.' "

It is established by our former opinion that Champion and Bradley were guilty of no conversion in refusing to permit the removal of the pipe. From the evidence upon both hearings it seems readily apparent that they have received or expect to receive a benefit from the use of the pipe. That benefit would seem to me to be proportional to the amount of interest they have in the lease or in the operation thereof. Bradley has 55% and Champion has 10%, and I therefore concede that each may properly be liable to compensate plaintiff to that extent. But under what possible theory can it be said that they have received 100% of the benefit, that they have been unjustly enriched to the full extent of the rental value of the casing? The use of the casing is for the benefit of all the lessees. It may well turn out to be the case that no benefit will be received by anyone if the well should actually prove unproductive in a commercial sense, but whatever the outcome of the well, I fail to see where Champion and Bradley have been enriched beyond their percentage interest in the lease. Under the principles of constructive contract (lease) then, I see no basis upon which to assess them with the whole rental cost of the casing. I therefore dissent as to the imposition of any more than 10% and 55%, respectively, against them.