Robert C. FIKE, Trustee, et al., Appellants,

v.

Viola RIDDLE, et al., Appellees.

Robert C. FIKE, Trustee, et al., Appellants,

v.

E.C. ALEXANDER, et al., Appellees.

Nos. 12–83–0113–CV, 12–83–0114–CV.

Court of Appeals of Texas, Tyler.

Aug. 30, 1984.

Mark How, Rohde, Chapman, Ford & How, Dallas, for appellants.

William K. Knolle, Hearne, Knolle, Lewallen, Livingston & Holcomb, Austin, for appellees.

COLLEY, Justice.

The above causes were consolidated for trial, and although separate judgments were rendered below, the issues of fact and law material to our disposition of the two appeals are virtually identical so we shall dispose of both cases with this opinion.

In a bench trial judgments were rendered below in each case, declaring that certain oil and gas leases acquired by defendants/appellants through execution sales terminated because of temporary cessation of production and failure of appellants to resume and continuously prosecute drilling or reworking operations. The judgments awarded appellants compensation for the market value of casing in the wells capable of producing oil in paying quantities. We reform the judgments by striking the orders awarding appellants compensation for the casing, and, as reformed, affirm.

The record reflects that on June 9, 1932, C.L. Riddle and wife, Fannie Riddle, as lessors, executed and delivered to R.R. Odgen, lessee, an oil and gas lease covering 94½ acres of land on the William Leech and Joshua Gray surveys; and on February 1, 1966, such lands were conveyed by the Riddles to E.C. Alexander, plaintiff/appellee in our cause no. 12–83–0114–CV; that on August 11, 1937, Viola Riddle, plaintiff/appellee in our cause no. 12–83–0113–CV, and her husband Wm. M. Riddle, as lessor, likewise executed and delivered an oil and gas lease covering a different 94½ -acre tract on the Leech and Gray surveys

to Ralph R. Odgen. William M. Riddle died prior to July 6, 1964, leaving his real property to his wife, Viola Riddle.

To avoid confusion, we shall refer to the leases above mentioned as the C.L. Riddle 1932 lease and the Wm. M. Riddle 1937 lease. The record shows without dispute that production of oil was obtained on both leases and continued to mid-November or late November 1978. At the time of the last production, the leases were owned and operated by Oil, Gas and Minerals Development Corporation (hereafter Development Corp.).

In January 1975 appellants[1] obtained a federal court money judgment against Development Corp. for more than four million dollars. On September 27, 1978, writs of execution were issued to enforce said judgment and were levied by a United States Marshal on the C.L. Riddle 1932 and the Wm. M. Riddle 1937 leasehold estates owned by Development Corp.; and on December 5, 1978, the marshal sold the leasehold estates to appellants. It appears from the record that in November 1978 Development Corp., the judgment debtor and owner of the leasehold estates, removed the rods, tubing and pumping units from producing oil wells on the leases. It is undisputed that no oil was produced from the wells from late November 1978 until sometime after March 8, 1979.

On February 6, 1979, some two months after appellants acquired the leases, appellant, Judgment Oil & Gas Company, Inc. (hereafter Judgment), acting by and through its chief operating officer, Donald Raymond, and its field supervisor, Wesley Ball, made an on-site inspection of both Riddle leases for the purposes of determining whether the leases were accessible and what machinery and equipment was required to restore production of oil therefrom. No equipment or machinery was ever taken to the lease sites by Judgment, and after February 6, 1979, Judgment made no entry upon the leases.

On March 8 and 9, 1979, appellees, Viola Riddle and E.C. Alexander and his wife, Ruth, as lessors, signed and delivered to plaintiffs/appellees, W.C. Riddle and Morton Shefts, as lessees, oil, gas and mineral leases covering the lands involved. These new leases were filed for record on March 16, 1979. The record discloses that these leases were prepared by an attorney employed by appellees, W.C. Riddle and Morton Shefts, following negotiations conducted during the month of January 1979 between them and appellees, Viola Riddle and E.C. Alexander. The record is devoid of any evidence demonstrating, or even suggesting, that the officers or representatives of appellant Judgment had actual notice that appellees, Viola Riddle and E.C. Alexander, had agreed to execute the new leases, or that such new leases had in fact been executed on March 8 and 9, 1979.

In briefing the cases, appellants present five identical points of error in each case. Under points 1 and 2 appellants contend that the evidence is legally and factually insufficient to support the trial court's express findings that production from the leases ceased on November 15, 1978, and that appellants did not resume drilling operations on the leases within ninety days after cessation of production.

Under identical points (point 6 in cause no. 12–83–0113–CV and point 5 in cause no. 12–83–0114–CV), appellants argue that the evidence is legally and factually insufficient to support the trial court's express finding that Development Corp. abandoned the leases on November 14, 1978.

Appellants argue under point 3, in the alternative, that oral statements made by Alexander to Judgment's agents on February 6, 1979, constituted a repudiation of appellants' title to the leasehold estates, and therefore under equitable considerations appellants were justified in suspending drilling and reworking operations on the leases thereafter until the title questions were judicially determined.

---

**1.** As best we can determine from the record, appellants, acting by and through Robert Fike, Trustee, are various individuals, trusts, and corporations constituting a partnership which includes Judgment Oil & Gas Company, Inc. as an individual partner.

Appellants maintain under point 4 that the trial court erred, in all events, in cancelling the leases as to 20 acres in the form of a square around each producing well on each lease.

The C.L. Riddle 1932 lease contained, among other clauses, the following: [2]

### 1.

It is agreed that this lease shall remain in force for a term of 5 years from this date, and as long thereafter as oil or gas, or either of them, is produced from said land by the lessee.

### 2.

It is specially agreed that in the event that oil or gas is produced from said premises and said production shall for any reason cease or terminate, lessee shall have the right at any time within ninety (90) days from the cessation of such production to resume drilling operations in the effort to make said leased premises again produce oil or gas, in which event this lease shall remain in force so long as such operations are continuously prosecuted, as defined in the preceding paragraph, and if they result in production of oil or gas, so long thereafter as oil or gas is produced in paying quantities from the premises.

### 3.

In case of cancellation or termination of this lease for any cause, lessee shall have the right to retain under the terms hereof twenty (20) acres of land around each oil or gas well producing, being worked on, or drilling hereunder (as long as such operations are continued in good faith) such tract to be designated by lessee in as near a square form as practicable.

The W.M. Riddle 1937 lease contained, among other clauses, the following:

### 1.

"It is agreed that this lease shall remain in force for a term of 1 year from this date, said term being hereinafter called 'Primary Term' and as long thereafter as oil or gas or either of them is produced from said land by the lessee."

### 2.

It is specially agreed that in the event that oil or gas is being produced or is obtained from said premises after the expiration of the primary term hereof and said production shall for any reason cease or terminate, lessee shall have the right at any time within ninety (90) days from the cessation of such production to resume drilling operations in the effort to make said leased premises again produce oil or gas in which event this lease shall remain in force so long as such operations are continuously prosecuted, as defined in the preceding paragraph, and if they result in production of oil or gas, so long thereafter as oil or gas is produced from the premises.

### 3.

(Clause identical to Paragraph 3 in the C.L. Riddle lease above.)

In essence, appellants do not challenge the applicability of clause 2 in the leases to the temporary cessation of production occurring after the expiration of the primary terms of the leases, but contend that since it is undisputed that each well was capable of producing oil, simply by the installation of rods, tubing therein and equipping the wells with pumping units, that each well should be construed as a producing well. We reject this contention because it is well established that a producing well is one where the products are produced in paying quantities and sold in the market. *Cox v. Miller*, 184 S.W.2d 323, 327 (Tex.Civ.App.—Eastland 1944, writ ref'd); *Hanks v. Magnolia Petroleum Co.*, 24 S.W.2d 5 (Tex.Comm'n App.1930,

**2.** These clauses appearing in the leases bore no numbers, but are numbered by the writer for reference purposes.

judgmt. adopted). Under the language used in clauses 1 and 2 of the 1932 and 1937 Riddle leases, given the cessation of production from each lease for more than ninety days between the dates of December 1, 1978, and March 8, 1979, and the failure of appellants (acting through Judgment) to continuously conduct operations to re-equip the wells, such leases ipso facto terminated on March 1, 1979, unless appellants were justified by the statements of Alexander hereinabove discussed in suspending operations on the leases to effect restoration of production.

Donald Raymond, chief operating officer of appellant Judgment, testified that on February 6, 1979, shortly after he, Wesley Ball and other representatives of Judgment had conducted the physical inspection of the lease sites, Alexander drove up in a pickup truck and "... basically challenged us as to what we were doing and where we had been. We said we had been back down on the leases and he identified himself as the owner of those leases and challenged the authority to put those signs up and said who is Judgment, that as far as he was concerned they didn't have any interest in these things." Alexander specifically denied making this statement and further denied that he ever made any statement regarding the title of appellee Judgment. We also note that the statements, attributed to Alexander by Raymond's testimony, do not purport to have been made on behalf of appellee Viola Riddle.

Appellants claim that by reason of the statements made by Alexander, as testified to by Raymond, they were entitled to suspend operations for drilling or reworking the wells on the Riddle leases under the maxim of equity expressed by our Supreme Court in *Kothmann v. Boley,* 158 Tex. 56, 308 S.W.2d 1 (1957), in the following language: "Lessors who ... wrongfully repudiate the lessee's title by *unqualified notice* that the leases are forfeited or have terminated cannot complain if the latter suspends operations under the contract pending a determination of the controversy and will not be allowed to profit by their own wrong." *Ib.* at 4 (emphasis added). *See also Adams v. Cannan,* 253 S.W. 2d 948 (Tex.Civ.App.—San Antonio 1952, writ ref'd). Appellants also contend that the conduct of appellees in negotiating for and finally executing and delivering the oil, gas and mineral leases to appellees, W.C. Riddle and Shefts, constitutes a repudiation of their title in the leases in question within the meaning of this maxim. We do not agree. As has already been noted, appellants did not have actual notice of the negotiations or of the execution and delivery of the leases to appellees, W.C. Riddle and Marton Shefts; therefore, no estoppel arose by virtue of such conduct on the part of Alexander and Viola Riddle. Further, we are persuaded that the trial judge, as the trier of the facts, was justified under the conflicting evidence on the issue in finding, as he did, that Alexander did not repudiate appellants' title to the leases. Moreover, we hold that the statements of Alexander, if made in the form as testified to by Raymond, did not constitute an unqualified notice to appellants that appellants' leases had terminated. *Adams v. Cannan, supra.* We overrule appellants' points 1, 2, 3 and 4. Because of our decision respecting points 1, 2, 3 and 4, we do not address appellants' point 5 in cause no. 12–83–0114–CV and point 6 in cause no. 12–83–0113–CV.

Appellants complain by point 5 in cause no. 12–83–0113–CV that the trial court erred in failing to grant them additional compensation in the amount of $4,600 for the casing in place in a second well bore on the Wm. M. Riddle 1937 lease. The evidence affirms the existence of the well, but conclusively establishes that such well was not in production even when such lease was operated by Development Corp. By two cross-points appellees argue that there is no evidence establishing appellants' ownership of the casing in any well located on the C.L. Riddle 1932 and the W.M. Riddle 1937 leases, and alternatively, if appellants are entitled to receive compensation for the value of the casing, their recovery should be limited to the reasonable market value of the casing in place, less the cost of

pulling the casing and the value of unsalvageable casing.

The leases in question provided that the lessee "... shall have the right at any time to remove all machinery and fixtures placed on said premises, including the right to draw and remove casing." The right secured to the lessee by such provision is limited by equitable considerations, that is, such right cannot be exercised by the lessee, when to do so would bring about a waste of natural resources by destroying a well capable of producing oil, gas or other substances in paying quantities. *Eubank v. Twin Mountain Oil Corp.*, 406 S.W.2d 789, 891 (Tex.Civ.App.—Eastland 1966, writ ref'd n.r.e.); *Patton v. Rogers*, 417 S.W.2d 470, 477–8 (Tex.Civ. App.—San Antonio 1967, writ ref'd n.r.e.); *Woodson Oil Co. v. Pruett*, 298 S.W.2d 856, 857 (Tex.Civ.App.—San Antonio 1957, writ ref'd n.r.e.). Where the owner of the casing is precluded by the principle of equity just discussed from removing the casings from a well producing or capable of producing products in paying quantities, he is, nevertheless, entitled to just compensation measured by the value of such casing in place less the cost of removing the same. *Hubert v. Collard*, 141 S.W.2d 677, 679 (Tex.Civ.App.—Austin 1940, writ dism'd judgmt. cor.); *Eubank* and *Patton*, both *supra*.

In this case the only evidence of appellants' ownership of the casing was the United States Marshal's deed which recited that levies of execution on the leasehold estates were made on September 27, 1978. The writs of execution, including the marshal's returns thereon, were not produced at trial. The marshal's deeds contained no language purporting to transfer or sell any machinery or equipment, including casing, located on the leases, and the record reveals no other evidence tending to support appellants' ownership of the casing or the existence of any judgment lien thereon. As pointed out by appellees, a rule of longstanding is that an assignment or sale of an oil and gas leasehold estate does not pass title to casing in place because the casing is a trade fixture and not a part of the realty. *Moore v. Carey Bros. Oil Co.*, 269 S.W. 75, 76 (Tex.Comm'n App.1925, judgmt. adopted); *Orfic Gasoline Production Co. v. Herring*, 273 S.W. 944, 945 (Tex.Civ.App.—Waco 1925, no writ). We conclude that there is no evidence to support the trial judge's finding that appellants are the owners of the casing in place on the Riddle leases. Appellants' first cross-point is sustained, and appellants' point 5 in cause no. 83–0113–CV is overruled.

The trial court's judgment in each cause is reformed by striking therefrom the order awarding appellants compensation in the amount of $4,600, and such judgments as here reformed, are affirmed.